**Earl Dean BOND, Petitioner–Appellant,**

v.

**UNITED STATES of America, Respondent–Appellee.**

**No. 92–3289.**

United States Court of Appeals, Seventh Circuit.

Argued March 2, 1993.

Decided Aug. 6, 1993.

Alan G. Kimbrell (argued), St. Louis, MO, for petitioner-appellant.

Robert T. Coleman, Asst. U.S. Atty., Thomas Edward Leggans (argued), Crim. Div., Fairview Heights, IL, for respondent-appellee.

Before RIPPLE, KANNE, and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Earl Dean Bond appeals from the denial of his 28 U.S.C. § 2255 motion to vacate, correct, or set aside his sentence. Because we conclude that the district court erred in barring Bond's ineffective assistance of counsel claim, we reverse its judgment and remand for further proceedings.

## I. FACTS

A jury convicted Bond of engaging in a continuing criminal enterprise (CCE); conspiring to distribute cocaine and more than fifty kilograms of marijuana; and attempting to possess with the intent to distribute more than fifty kilograms of marijuana. He appealed, and we affirmed. *See United States v. Bond,* 847 F.2d 1233 (7th Cir.1988). As a result of his conviction and sentence, Bond forfeited approximately $128,000 discovered in a brown suitcase that was seized by drug enforcement agents from a hotel room in Chesterfield, Missouri. That seizure and the admission of the money into evidence at his trial are the focal points of Bond's section 2255 motion and this appeal. Bond contends that agents seized the suitcase pursuant to an invalid search warrant, which was subsequently quashed by a state court judge. Conceding that the warrant was invalid, the government maintained at Bond's trial that the search and seizure were nonetheless justified under the exigent circumstances exception to the warrant requirement. *See, e.g., Michigan v. Tyler,* 436 U.S. 499, 509, 98 S.Ct.

1942, 1949, 56 L.Ed.2d 486 (1978); *United States v. Hughes,* 993 F.2d 1313, 1315 (7th Cir.1993).

Bond's section 2255 motion focuses primarily on the fact that his trial counsel did not move to suppress the allegedly improper evidence until the trial was well under way. The district court found the motion untimely and admitted the money into evidence. Bond also claims that his trial counsel should have made an offer of proof as to why suppression would have been appropriate.

At a hearing on the section 2255 motion, Robert Ciuffa, an attorney who represented Bond in Missouri state court, testified that he had convinced a state court judge to quash the warrant pursuant to which Bond's bag had been seized and to order that the suitcase and money be returned to Bond. Ciuffa recalled that at the state hearing, an Assistant United States Attorney had not disputed Bond's contention that the suitcase had been seized pursuant to the search warrant alone.[1] After the state judge quashed the warrant, Ciuffa obtained the suitcase and money from the St. Louis County Police Department. But before long, federal drug enforcement agents seized the items from Ciuffa without a warrant and without arresting Bond. Bond had not yet been indicted on federal charges at that time.

Bond also testified at the section 2255 hearing. Bond said that two months prior to trial, he had told his trial attorney about the seizure of the suitcase from the hotel room, explaining that he "felt that the Government was going to use that as part of [its] evidence...." (Dec. 19, 1991 Tr. at 19.) He had informed his new counsel that Ciuffa had been successful in quashing the warrant and that Ciuffa "had all the records and that he should be contacted to help us on a suppression motion." (*Id.*) According to Bond, he and his trial counsel had discussed the filing of a motion to suppress "on numerous occasions," and his attorney had "said that he would contact Mr. Ciuffa and get all the records and make arrangements to file a motion to suppress." (*Id.* at 19–20.) Finally,

Bond testified that he had asked his counsel about the motion to suppress on the first day of his trial, and counsel had told him "that it had been filed but it had been denied." (*Id.*)

In fact, Bond's attorney had never filed a motion to suppress. Instead, he raised the issue for the first time during the third week of trial, when he told the district court that the money had been seized by drug enforcement agents and that it should be excluded from evidence because its admission would violate both the Missouri and United States Constitutions. The exchange that then took place between the district court, Bond's trial attorney, and the government attorney seemingly contradicts Bond's account inasmuch as it suggests that his trial counsel had been unaware until, at the earliest, the week before Bond's trial that the search warrant had been quashed:

> [Bond's Counsel]: That document [the order quashing the search warrant] wasn't given to me. It was laying out here in the courtroom Monday when we started to pick the jury. Quite frankly, I didn't catch it. I don't see much problem with stopping the evidence now regarding it, but I do think that as long as it's been declared, the search and seizure were declared unconstitutional by a recognized Court, that it shouldn't proceed.

> MR. MERKEL: ... [I]n regards to the material that [counsel] has, we talked the week before trial about that material, and I told him about the suppression of it over in St. Louis, and we met in my office, and he didn't have enough time to stay, and I said I would get it to him as quickly as I could, the additional copies of documents that had not been provided, as far as I could tell, up to that time. We copied those and I laid them out here for everybody the morning that we picked the jury, Monday, and that's correct, but there was discussion about it before that time. As to, and there is a search warrant involved in what happened with DEA that was never in fact executed as far as I can tell, but which was returned and the money listed as what was

---

1. At trial, however, the government asserted that the seizure occurred pursuant to an arrest. The government makes the same argument here.

seized.... There was a state court judge that ordered that money returned. It was returned to Mr. Bond's attorney at that time, and reseized immediately by DEA pursuant to the arrest that they effected, and that's what they did, as my evidence would show, they arrested them on that date, went down, printed them, and everything else and then they were released, per our instructions, for future indictment. Our theory is that that was, that was seized pursuant to the arrest.

THE COURT: The second arrest.

MR. MERKEL: The arrest occurred at the time that they were armed with a certain warrant. They had a search warrant in their back pocket which they did not use, but they made a return on it....

THE COURT: They seized the money after they had given it back to them.

MR. MERKEL: It has been suppressed. I don't think that that's binding on this Court. Number one, I think that's a question that can still be answered here. Number two, this is in the form, I think, of a motion to suppress, and I think it's awfully late in the game to be raising that question. I mean, that's a pretrial motion, as I understand it, under Rule 12.

[Bond's Counsel]: It would be awful tough to have done that when you get the document in and of itself on the day that the trial begins. As far as the discussion the week before that, he may have mentioned it.... There was an awful lot of talking going on with a lot of people. But at the same time, but I think that once a court of competent jurisdiction has found that evidence to be suppressed and that was it was illegally seized—

THE COURT: Here is what I have a problem with, they seized it, and it was suppressed, then they seized it again. Well, the second seizure has never been suppressed.

\* \* \* \* \* \*

THE COURT: I am going to leave it like it is. Let's go.

(Trial Tr. at 449–51, Bond App. at 11–13.)

Bond ultimately was convicted, and he retained new counsel on appeal. Bond testified at the section 2255 hearing that he discussed with appellate counsel the possibility of raising the suppression issue on appeal and that he never instructed counsel to abandon the issue. (Dec. 19, 1991 Tr. at 22.) Nonetheless, his appellate counsel did not raise the ineffectiveness of counsel claim Bond now pursues or the related claims that follow from it. Instead, Bond's direct appeal challenged only the CCE conviction, the sufficiency of the evidence supporting it, and the sufficiency of the CCE count in the indictment. We rejected these arguments and affirmed Bond's conviction. *See Bond,* 847 F.2d at 1236–40.

Bond's section 2255 motion advances essentially the same arguments he raised on direct appeal, but on different factual grounds that focus on the cocaine charges. The linchpin of his motion is the new claim that his Sixth Amendment right to effective assistance of counsel was violated when his trial counsel failed to keep from the jury evidence purportedly seized in violation of the Fourth Amendment.

## II. ANALYSIS

■ A defendant may challenge his conviction under section 2255 on a ground not raised on direct appeal only by showing: (1) both good cause for his failure to raise the issue on direct appeal and actual prejudice from the newly-asserted errors (*see United States v. Frady,* 456 U.S. 152, 168, 102 S.Ct. 1584, 1594, 71 L.Ed.2d 816 (1982)); or (2) that the district court's refusal to consider the issue on procedural grounds would lead to a fundamental miscarriage of justice. *See Smith v. Murray,* 477 U.S. 527, 537–38, 106 S.Ct. 2661, 2667–68, 91 L.Ed.2d 434 (1986). The district court dismissed Bond's motion, finding no cause for his failure to raise the issues on direct appeal.

One possible cause for a movant's failure to raise the ineffectiveness issue on direct appeal may be that appellate counsel were themselves ineffective. *See Velarde v. United States,* 972 F.2d 826, 827 (7th Cir.1992). For instance, appellate counsel may be "constitutionally deficient in omitting a dead-bang winner even while zealously pressing other strong (but unsuccessful) claims." *Page v.*

*United States,* 884 F.2d 300, 302 (7th Cir. 1989).[2] That "dead-bang winner" could be the argument that *trial* counsel made errors so serious that his representation fell "outside the wide range of professionally competent assistance." *Strickland v. Washington,* 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984); *see also Evitts v. Lucey,* 469 U.S. 387, 397, 105 S.Ct. 830, 836, 83 L.Ed.2d 821 (1985).[3] Ineffectiveness compounded by ineffectiveness in this way would leave a section 2255 motion as the only viable means for a defendant to seek relief from the errors of his trial lawyer.

To be sure, omitting a claim of ineffective assistance on direct appeal might be foolhardy—and possibly itself ineffective—if the argument is a "dead-bang winner." But raising the issue on direct appeal presents its own perils because the argument must rest solely on the trial court record, which often offers little insight into counsel's decision-making process. *See United States v. Penass,* 997 F.2d 1227, 1229 (7th Cir.1993); *United States v. Taglia,* 922 F.2d 413, 417 (7th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2040, 114 L.Ed.2d 125 (1991). Thus, as we observed in *United States v. Davenport,* 986 F.2d 1047, 1050 (7th Cir.1993), "a defendant who presents an ineffective-assistance claim for the first time on direct appeal has little to gain and everything to lose."[4] Inef-

fective assistance claims almost always fail on direct appeal because we grant every indulgence "to the possibility that a seeming lapse or error by defense counsel was in fact a tactical move, flawed only in hindsight." *Taglia,* 922 F.2d at 417–18; *see also Penass,* 997 F.2d at 1229. In order to overcome this presumption of effective assistance, a criminal defendant often must supplement the record with extrinsic evidence that illuminates the attorney's errors. Otherwise, "counsel's apparent pratfalls [are] presumed to be failed stratagems rather than professional malpractice." *Taglia,* 922 F.2d at 418. For that reason, a defendant who must supplement the trial record to support his ineffectiveness claim "will be well advised to wait till the postconviction stage and will be safe in doing so." *Id.* at 419; *see also Davenport,* 986 F.2d at 1050. If the defendant has no extrinsic evidence that would support his claim, however, then *Taglia* requires that he raise the claim on direct appeal or lose it, for a defendant "must make his ineffective assistance claim at the earliest feasible opportunity." *Taglia,* 922 F.2d at 418–19. Only if there is a need to embellish the picture of trial counsel's performance with extrinsic evidence will we excuse the failure to raise the claim on direct appeal. *Id.; see also Davenport,* 986 F.2d at 1050.[5]

---

**2.** By the same token, counsel's strategy decisions—including the decision not to pursue a plethora of issues on appeal—ordinarily do not violate the Sixth Amendment's guarantee of effective assistance. *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Rogers–Bey v. Lane,* 896 F.2d 279, 282 n. 2 (7th Cir.), *cert. denied,* 498 U.S. 831, 111 S.Ct. 93, 112 L.Ed.2d 65 (1990). Lawyers, after all, "need not pursue every conceivable avenue; they are entitled to be selective." *United States v. Davenport,* 986 F.2d 1047, 1049 (7th Cir.1993) (citing *Jones v. Barnes,* 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983)). Indeed, selectivity is imperative because "[d]efendants need dedicated, skillful appellate counsel, not routineers who present every non-frivolous claim." *Page,* 884 F.2d at 302.

**3.** In addition to proving that counsel's performance was deficient (the "performance prong"), a defendant claiming ineffective assistance also must show that his attorney's deficient performance prejudiced him (the "prejudice prong") by causing an unreliable result at trial, or a fundamentally unfair proceeding. *See Lockhart v. Fretwell,* —— U.S. ——, ——, 113 S.Ct. 838,

844, 122 L.Ed.2d 180 (1993) (citing *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064).

**4.** We explained in *Davenport* that

[t]he best the defendant can hope for is a remand, with instructions to explore explanations for conduct that appears questionable. We have not found any case in this circuit reversing a judgment without such a remand. If all the defendant can get is an opportunity to enlarge the record—something he could obtain with less fuss by a proceeding under § 2255— then raising ineffective assistance on appeal does the defendant no favors. For a defendant assuredly can *lose* such an argument. 986 F.2d at 1050 (emphasis in *Davenport* ); *see also Taglia,* 922 F.2d at 418 (a defendant "is unlikely to get to first base [on a section 2255 motion] if he already has presented a claim of ineffective assistance of counsel to the court of appeals unsuccessfully.").

**5.** In a close case, we must err on the side of permitting the extrinsic evidence and entertain the claim so as to avoid punishing a defendant

Here, the district court found that Bond's ineffectiveness of trial counsel claim was barred because it was not raised on direct appeal: "Because the petitioner's attorney on his direct appeal was not his trial counsel, he is barred from raising his ineffective assistance of trial counsel claim for the first time on post-conviction review." *United States v. Bond,* No. 91 C 637, slip op. at 5 (S.D.Ill. Aug. 27, 1992). As support for its conclusion, the district court relied on *Velarde,* where we observed that "[b]ecause Velarde's attorney on direct appeal was also his trial counsel, he is not barred from raising his ineffectiveness of trial counsel claim for the first time on post-conviction review." 972 F.2d at 827; *see also Taglia,* 922 F.2d at 418. Yet it does not follow from *Velarde* and *Taglia* that if trial and appellate counsel were different, an ineffectiveness of trial counsel claim is necessarily barred if not raised on direct review. In that circumstance, we look instead to whether the claim is based on evidence outside the trial record or whether the ineffectiveness is apparent from the trial record or from evidence that is a matter of public record. *See Taglia,* 922 F.2d at 418.

Bond argues that he failed to advance his ineffectiveness claim on direct appeal because he needed to supplement the trial record. At the hearing, the district court heard evidence on two matters that are beyond the scope of the trial record: (1) that Bond's trial attorney was being investigated for possible disciplinary violations at the time of Bond's trial; and (2) that Bond had notified his counsel before trial of the search warrant issue (which was itself further developed at the section 2255 hearing) and that Bond's counsel had lied to him about filing the motion to suppress. The district court apparently believed that this evidence was not relevant to Bond's claims because it found that "[t]he trial record reveals all of the grounds currently alleged by the petitioner in his 2255 motion, including the alleged ineffectiveness of trial counsel." *Bond,* No. 91 CV 637, slip op. at 5. We disagree and therefore find that Bond did not lose his

ineffective assistance claim by failing to raise it on direct appeal.

*A. Disciplinary Proceedings*

■ Bond contends that an investigation of his trial attorney by the Illinois Attorney Registration and Disciplinary Commission ("ARDC") distracted his counsel so profoundly that he "prepared and tried [the] case beneath a Sword of Damocles." (Bond's Br. at 15.) Bond maintains that his counsel was scheduled for an ARDC interview on disciplinary charges at the same time that he was defending Bond at trial and that the coincidence of the preliminary disciplinary proceeding with Bond's trial led to substandard representation. The fact of the disciplinary proceeding was not disclosed by the trial record and could be brought to the district court's attention only through the submission of supplemental evidence. Because we find that investigation possibly relevant to the ineffectiveness claim, Bond was justified in waiting until the postconviction stage to raise the issue. Yet, because Bond presented no evidence at the section 2255 hearing to establish in what way the incipient disciplinary action affected his counsel so as to deprive Bond of effective representation under the Sixth Amendment, the extrinsic evidence relating to the ARDC investigation adds nothing to his claim.

Courts consistently have declined to adopt a *per se* rule that ineffective assistance always results when a disciplinary action is pending against the defendant's attorney. The Supreme Court has cautioned that a *per se* rule should be applied only when it "will achieve the correct result in almost all cases" and not "when application of the presumption will not reach the correct result most of the time." *Coleman v. Thompson,* — U.S. —, —, 111 S.Ct. 2546, 2558, 115 L.Ed.2d 640 (1991). More to the point, the Court has held that the "breach of an ethical standard does not necessarily make out a denial of the Sixth Amendment guarantee of assistance of counsel" under *Strickland. Nix v. Whiteside,* 475 U.S. 157, 165, 106 S.Ct. 988, 993, 89 L.Ed.2d 123 (1986).[6] Of course, *Nix* in-

_____

who waited to supplement the record with evidence that we later find irrelevant.

**6.** The Court explained:

When examining attorney conduct, a court must be careful not to narrow the wide range

volved an alleged breach of ethics in the course of counsel's representation of the defendant himself, whereas the ARDC investigation of Bond's trial counsel related to a separate matter. But we previously have rejected a *per se* rule in that context as well. In *United States v. Williams*, 934 F.2d 847, 851–52 (7th Cir.1991), for example, we declined to adopt a *per se* rule of ineffectiveness when an attorney's license was suspended after a defendant's trial due to his neglect of other clients' legal matters.[7] We instead required the defendant to show "actual errors and omissions by counsel that prejudiced the defense." *Id.* at 852. We similarly have found that representation by an attorney suspended from the state bar for nonpayment of dues at the time of a defendant's trial did not necessarily violate the Sixth Amendment. *Reese v. Peters*, 926 F.2d 668, 670 (7th Cir. 1991).

Other circuits similarly have refused to find *per se* ineffectiveness when an attorney has been suspended or disbarred, or when he has performed under other professional or personal duress.[8] The sole exception that has been recognized is when a representative, unbeknownst to his client, has never been admitted to the practice of law in any state, either because he has never applied for admission or because he has been denied admission for a reason related to legal ability. *See, e.g., Solina v. United States*, 709 F.2d 160, 167 (2d Cir.1983); *see also Reese*, 926 F.2d at 670; *United States v. Hoffman*, 733 F.2d 596, 599–600 (9th Cir.) (collecting

cases), *cert. denied*, 469 U.S. 1039, 105 S.Ct. 521, 83 L.Ed.2d 409 (1984). Because Bond's attorney was a member of the Illinois bar before and during Bond's trial, this case is not akin to those in which courts have applied a *per se* rule of ineffective assistance, and we decline to do so here. Rather, to make out an ineffectiveness claim, Bond must demonstrate that he was prejudiced by an actual error or omission that fell below the range of reasonable, professional, and conscientious representation. *See Williams*, 934 F.2d at 852. The ARDC investigation is only relevant to that claim if Bond could link an error or omission of his trial counsel to the pending investigation. He made no attempt to do so here. Thus, although Bond established cause for failing to raise on direct appeal an ineffectiveness claim based in part on the disciplinary investigation, he established no actual prejudice from the ARDC investigation of his trial counsel. *See Frady*, 456 U.S. at 168, 102 S.Ct. at 1594; *see also supra*, at 634–35. On remand, the district court need not provide Bond another opportunity to establish prejudice, and it therefore need not consider the ARDC matter further. That aspect of Bond's ineffectiveness claim fails.

## B. Motion to Suppress

The extrinsic evidence pertaining to the suppression issue, however, provides a stronger basis for Bond's ineffective assis-

---

of conduct acceptable under the Sixth Amendment so restrictively as to constitutionalize particular standards of professional conduct and thereby intrude into the state's proper authority to define and apply the standards of professional conduct applicable to those it admits to practice in its courts.
*Id.*

7. The order of suspension had been entered in the course of the defendant's trial but did not take effect until the trial had been completed. *Id.* at 851.

8. *See, e.g., Bellamy v. Cogdell*, 974 F.2d 302, 308 (2d Cir.1992) (en banc) ("[T]here is simply nothing inherent in an attorney's illness that necessarily will impede a spirited defense 'most of the time' to justify finding the attorney's representation *per se* ineffective"), *cert. denied*, — U.S. ——, 113 S.Ct. 1383, 122 L.Ed.2d 759 (1993);

*United States v. Stevens*, 978 F.2d 565, 567 (10th Cir.1992) (no *per se* ineffective assistance when counsel is disbarred at time of proceedings and no one, himself included, is aware of his status); *Waterhouse v. Rodriguez*, 848 F.2d 375, 382–83 (2d Cir.1988) (rejecting *per se* rule of ineffectiveness when licensed attorney is unknowingly disbarred immediately before or during trial); *United States v. Mouzin*, 785 F.2d 682, 698 (9th Cir.) ("Neither suspension nor disbarment invites a per se rule that continued representation in an ongoing trial is constitutionally ineffective"), *cert. denied*, 479 U.S. 985, 107 S.Ct. 574, 93 L.Ed.2d 577 (1986); *United States v. Hoffman*, 733 F.2d 596, 599–601 (9th Cir.) (eschewing *per se* rule that attorney's suspension by state bar automatically results in the denial of effective counsel in federal district court in another state), *cert. denied*, 469 U.S. 1039, 105 S.Ct. 521, 83 L.Ed.2d 409 (1984).

tance claim. Bond argues that appellate counsel could not have raised this issue in the earlier appeal because the record of trial counsel's ineffectiveness was not fully developed. Although the district court disagreed, we find that Bond was justified in bypassing the issue on direct appeal in order to supplement the record for post-conviction review. In other words, we think Bond's extrinsic evidence was relevant to whether his Sixth Amendment rights were violated and that the district court should have considered the claim on its merits.

Considered in isolation, the colloquy about whether the money should be suppressed that occurred during the third week of trial (see supra, at 633–34) might suggest that Bond's counsel was unprepared, disorganized, and ultimately ineffective in failing to either pursue the matter earlier or make an offer of proof as to why suppression was appropriate. Despite the government's rather charitable characterization, trial counsel's belated attempt to exclude the evidence hardly seems an intentional trial tactic enabling him to argue later that the suitcase did not belong to Bond. That aside, it is unlikely that we would have found that counsel's performance was unreasonable from the trial transcript alone. The district court's finding to the contrary notwithstanding, more was needed for Bond to attempt to establish ineffective assistance. For example, without Ciuffa's testimony relating to the circumstances of the state court hearing and Bond's representation that he had made trial counsel aware of those circumstances and that counsel himself recognized the need for a suppression motion, we might presume a tactical decision or failed strategy rather than professional malpractice. See Taglia, 922 F.2d at 417–18. Bond's extrinsic evidence is aimed at rebutting that presumption.

We do not decide today whether the supplemental evidence Bond offered establishes that his trial counsel was ineffective. We hold only that Bond did not default this claim by failing to raise it on direct appeal. The evidence adduced at the section 2255 hearing adds to Bond's claim the possibility that his counsel had knowledge of but failed to investigate the warrant issue and that he may have lied to Bond about having filed a motion to suppress. Of course, this is only Bond's take on events, and because the district court found a procedural default, it never assessed his credibility. Moreover, Bond's trial counsel did not testify at the hearing and did not submit an affidavit to either confirm or deny Bond's testimony. Yet that testimony can hardly be ignored as irrelevant to Bond's claim. Bond established cause for his failure to raise the ineffectiveness issue on direct review—the record required the kind of elaboration that is possible only in a postconviction proceeding. See Taglia, 922 F.2d at 418–19. The district court therefore erred in barring Bond's claim.

Finally, we must decide whether we or the district court are best situated to consider Bond's claim at this juncture. Our decisions make clear that ineffective assistance claims are best handled in the first instance by the district court, which has had the opportunity to observe and interact with counsel. See, e.g., United States v. Booker, 981 F.2d 289, 292 (7th Cir.1992). At the same time, we have been willing to resolve such claims "even without benefit of the district court's views 'if the issue is sufficiently clear-cut.'" United States v. Limehouse, 950 F.2d 501, 503 (7th Cir.1991) (quoting Johnson v. United States, 805 F.2d 1284, 1290 (7th Cir.1986)), cert. denied, —— U.S. ——, 112 S.Ct. 1962, 118 L.Ed.2d 563 (1992). We think the district court is in the better position here, for Judge Beatty observed trial counsel's representation in the course of Bond's trial and heard Bond's testimony in this supplemental proceeding. The district court should therefore consider Bond's claims on remand in accordance with Lockhart v. Fretwell, —— U.S. ——, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), to determine whether Bond's counsel was ineffective and whether that ineffectiveness deprived Bond of a fair trial—that is, a trial whose result is reliable. See also Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. A supplemental hearing may aid the resolution of Bond's claims.

## III. CONCLUSION

For the foregoing reasons, we find that Bond's ineffective assistance of counsel claim

is not barred by his failure to raise it on direct review. We reverse the district court's judgment and remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED.