**UNITED STATES of America**

v.

**Ronald JACKSON.**

**No. 95 C 4376.**

United States District Court,
N.D. Illinois,
Eastern Division.

April 15, 1996.

---

Z. Scott, Asst. U.S. Atty., Chicago, IL, for plaintiff.

Ronald E. Jackson, Memphis, TN, pro se.

### MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge:

Pursuant to 28 U.S.C. § 2255, Defendant Ronald Jackson moves *pro se* to vacate the convictions, or alternatively to amend the sentences, arising from his cocaine distribution activities. Jackson maintains that his trial attorney rendered ineffective assistance of counsel in violation of the Sixth Amendment. For the reasons set forth below, we deny the motion.

### I. Background

After a jury trial in 1990 on a multi-count, multi-defendant indictment, the defendant was found guilty of conspiring to distribute cocaine and to possess cocaine with the intent to distribute (Count 1), and for a separate count of possession of cocaine with the intent to distribute (Count 5). 21 U.S.C. §§ 841, 846. The evidence at Jackson's trial established that the defendant participated in a major cocaine distribution operation captained by Mario Lloyd. Lloyd's operation reaped revenues of $20–30 million by distributing several hundred kilograms of cocaine throughout the Chicago and Milwaukee areas.

According to the trial testimony, from September 1987 to mid-1988, Jackson worked directly for Lloyd distributing drugs and handling cash. During this period, Billy Cannon, a Milwaukee drug dealer, and two of Cannon's workers, Joseph Grandsberry and Anthony Turnage, regularly purchased cocaine from Lloyd's drug ring, traveling to Chicago on average several times per week and purchasing one or two-kilogram quantities of cocaine each time. Cannon testified that Jackson was present at two or three of his early purchases from Lloyd. Tr. at 128–30, 125–36.[1] Grandsberry and Turnage also

---

1. We refer to pages from the trial transcript provided by the government as "Tr. ___." Refer-

testified that Jackson had personally delivered cocaine to them in Chicago on several occasions. In addition, Troy Shelton testified that in April 1988, Jackson had supplied cocaine to Gregory Hawkins, who was one of Shelton's cohorts. Finally, Shelton testified that Jackson eventually played a new role in the conspiracy: Jackson became a distributor himself, and purchased four to six kilograms total during Summer 1988 from Shelton and Hawkins, who had since filled Jackson's role in Lloyd's operation.

After trial, the defendant's attorney, Joseph Miller, submitted an objection to the portion of the presentence report (PSR) that held Jackson accountable for the distribution of fifty kilograms of cocaine. We rejected Miller's argument that Jackson could only reasonably foresee the distribution of the eight or fifteen kilograms that the defendant personally handled, and we refused to consider Jackson a minor participant in the conspiracy, U.S.S.G. § 3B1.2. Ultimately, we sentenced the defendant to 260 months imprisonment.

Soon after trial, Jackson joined codefendant Lloyd's *pro se* motion under Federal Rule of Criminal Procedure 33 for a new trial because of newly discovered evidence. Specifically, the defendant asserted that Shelton had approached Jackson in prison and admitted to falsifying his trial testimony. In support of their claim, the defendants submitted an affidavit by Jackson and a handwritten note that Jackson had allegedly acquired from Shelton. We denied the motion. *United States v. Lloyd,* No. 89 CR 427 (memorandum opinion of Apr. 5, 1992).

On direct appeal, the Seventh Circuit affirmed the conviction, sentence, and the denial of the Rule 33 motion. *United States v. Walker,* 25 F.3d 540 (7th Cir.), *cert. denied,* — U.S. ——, 115 S.Ct. 531, 130 L.Ed.2d 434 (1994). However, prior to hearing the appeal on the merits, the appellate court discharged Miller as the defendant's attorney.[2]

In support of the instant motion, Jackson argues that Miller suffered from alcoholism and consequently committed a series of errors and omissions at trial, rendering Miller's representation constitutionally infirm. Jackson has submitted a report by the Illinois Attorney Registration and Disciplinary Commission (ARDC) disciplining Miller for several ethical violations, including the failure to properly perfect Jackson's notice of appeal. According to this report, Miller ascribed his conduct to alcoholism and severe stress arising from rehabilitation efforts. *See* Govt.Br., Ex. A, at 6–10. In addition, the report reveals that Miller testified to intermittent heavy drinking from 1987 through 1990. *See id.* at 6–9.

As best as we can discern, Jackson's motion comprises the following claims:

1. Miller's alcoholism so impaired the defense as to constitute no representation at all.

2. Miller inadequately prepared for trial by failing to obtain statements from, and grand jury testimony transcripts of, the government's witnesses.

3. Miller inadequately cross-examined government witnesses by failing to sufficiently impeach their testimony regarding Jackson's participation in Lloyd's drug operation. Specifically,

 a. Miller failed to investigate and obtain documentation relating to Jackson's address in order to impeach testimony that several drug purchases took place at Jackson's residence.

 b. Miller did not cross-examine three government witnesses on alleged contradictions between their trial testimony and their grand jury testimony.

 c. Miller did not adequately cross-examine Shelton on an alleged contradiction between his testimony and the indictment's allegations.

4. Miller inadequately supported the objection to the PSR.

5. Miller failed to investigate Shelton's alleged jailhouse recantation or assist Jackson with the Rule 33 motion.

---

ences to grand jury transcripts will be denoted "[Witness] Grand Jury Tr. at ___"; out of an abundance of caution, the grand jury transcripts are filed under seal.

**2.** Although Miller had filed a notice of appeal for Jackson, the attorney never properly perfected the appeal despite several Seventh Circuit orders demanding he do so.

6. Miller's discharge from representing Jackson on appeal undermined the defendant's effort to overturn the denial of the Rule 33 motion.

We address the claims after examining whether Jackson has procedurally defaulted them.

## II. Discussion

### A. Procedural Default

 Generally, a § 2255 movant may not raise a claim that the defendant failed to raise on direct appeal unless he can show "both good cause for his failure ... and actual prejudice from the newly-asserted errors." *Bond v. United States*, 1 F.3d 631, 634 (7th Cir.1993). Consistent with this general rule, a movant may raise a claim of ineffective assistance of counsel for the first time in § 2255 proceedings if the defendant either (1) was represented by the same attorney at trial and on direct appeal, or (2) supports his claim with evidence extrinsic to the trial record. *Guinan v. United States*, 6 F.3d 468, 471 (7th Cir.1993). In Jackson's case, it is undisputed that the defendant failed to raise an ineffectiveness of counsel claim on direct appeal, and that Miller did not represent the defendant on appeal. Consequently, Jackson's claims are barred unless based on extrinsic evidence.

 Claims of ineffectiveness of counsel often rely on extrinsic evidence, *United States v. Taglia*, 922 F.2d 413, 418 (7th Cir.), *cert. denied*, 500 U.S. 927, 111 S.Ct. 2040, 114 L.Ed.2d 125 (1991); *see United States v. Fish*, 34 F.3d 488, 491 n. 1 (7th Cir.1994) (noting appellate court's reluctance to decide ineffective counsel claims on direct review because claims generally involve extrinsic evidence), and thus a defendant may properly postpone raising an ineffectiveness claim until a § 2255 motion so long as he reasonably presumes that the claim calls for the development of facts outside the trial record, *see Guinan*, 6 F.3d at 472. In the instant case, Jackson contends that he never raised ineffectiveness of counsel on direct appeal because he relies upon one piece of extrinsic evidence: the ARDC report disciplining Miller for several ethical violations due to alcoholism. Although the government does not contest that this report constitutes extrinsic evidence, *see Bond*, 1 F.3d at 636 (finding ARDC report extrinsic evidence), the government responds that this report is only relevant to Jackson's failure to perfect the appeal. The defendant's remaining claims, the government argues, merely ask us to assess Miller's performance from the trial record.

 Although in some sense accurate, the government's position takes too narrow a view of Jackson's *pro se* motion. Jackson attempts to link Miller's alcoholism to several alleged instances of ineffective assistance. By assessing the record in light of Miller's drinking problem, Jackson hopes to rebut the strong presumption of attorney competence and convince the Court that Miller's alleged errors were uninformed blunders rather than strategic mistakes. *See Taglia*, 922 F.2d at 417–18 (admonishing that apparent errors normally should be interpreted as failed tactical moves). Consequently, the ARDC report is relevant to Jackson's more specific allegations of ineffective representation.[3] In fact, prior to Jackson's appeal, the government successfully resisted the defendant's efforts to enter the report into the record by arguing that claims alleging ineffectiveness of counsel are more appropriately dealt with in collateral proceedings. Invoking a procedural bar at this stage would trap the defendant in a Catch-22. *See Guinan*, 6 F.3d at 471–72.[4]

---

**3.** Even if the ARDC report has not turned out to be directly relevant to his specific allegations of error, Jackson's petition still would not be barred from collateral review. Jackson should not be penalized if, prior to direct appeal, "it had reasonably appeared that new evidence might be necessary, though it has since become apparent that the trial record itself was the only evidence that could be presented in support of the claim." *Guinan*, 6 F.3d at 472. Prior to appeal, it would have been reasonable for Jackson to conclude that additional evidence surrounding his attorney's drinking or inadequate preparation might arise upon further investigation. Consequently, Jackson's claims are not barred from review.

**4.** We should note that Jackson has not requested an evidentiary hearing in order to force Miller to testify to his preparation for and conduct during Jackson's trial. Outside of the ARDC report, Jackson has not provided any additional evidence to support his accusations that Miller failed to review pretrial hearing material or investigate Shelton's alleged recant.

## B. Ineffectiveness of Counsel

In order to establish ineffective assistance at trial, a defendant must demonstrate both that (1) his attorney's performance fell "below an objective standard of reasonableness" that is "outside the wide range of professionally competent assistance," and (2) "but for counsel's unprofessional efforts, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688, 690, 104 S.Ct. 2052, 2064–65, 2066, 80 L.Ed.2d 674 (1984). In assessing counsel's performance, "every indulgence will be given to the possibility that a seeming lapse or error by defense counsel was in fact a tactical move, flawed only in hindsight." *Taglia,* 922 F.2d at 417–18. In addressing prejudice, "it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland,* 466 U.S. at 693, 104 S.Ct. at 2067. In addition to demonstrating a reasonable probability that, but for counsel's errors, the outcome would have been different, the defendant must show that his counsel's incompetence deprived him of a fair trial. *Lockhart v. Fretwell,* 506 U.S. 364, 369–70, 113 S.Ct. 838, 842–43, 122 L.Ed.2d 180 (1993). Mere conclusory assertions that errors prevented an acquittal do not satisfy *Strickland's* prejudice requirement. *United States v. Asubonteng,* 895 F.2d 424, 429 (7th Cir.), *cert. denied,* 494 U.S. 1089, 110 S.Ct. 1830, 108 L.Ed.2d 959 (1990). Further, a court may dismiss a § 2255 motion without an evidentiary hearing if the trial and expanded record conclusively demonstrate that the petitioner is not entitled to relief, *Dugan v. United States,* 18 F.3d 460, 464 (7th Cir.1994), even if the movant relies on outside evidence to raise his claim in the first place, *Soto v. United States,* 37 F.3d 252, 254 (7th Cir.1994) ("[W]hile a bare trial record is typically inadequate to conclusively demonstrate a right to relief on such a claim, it may at the same time indicate that no right to relief exists or will emerge upon further evidentiary development.").

### 1. Alcoholism and Failure to Acquire Transcripts of Pretrial Hearings

Jackson first alleges that Miller suffered from alcoholism during trial and that this condition rendered Miller's assistance the equivalent of no representation at all. Performance that is so deficient as to constitute abandonment of the case violates the Sixth Amendment *per se.* *See United States v. Cronic,* 466 U.S. 648, 658–59, 104 S.Ct. 2039, 2046–47, 80 L.Ed.2d 657 (1984). If a defendant establishes a *per se* violation of the Sixth Amendment, he need not allege specific errors or omissions at trial or explain how these errors rendered the trial fundamentally unfair. *See Bond,* 1 F.3d at 637. Accordingly, representation by an attorney who either never arrives at trial or fails to submit a brief after filing for appeal would be constitutionally infirm unless the defendant obtained new counsel. *See Castellanos v. United States,* 26 F.3d 717, 719 (7th Cir. 1994).

However, Jackson's conclusory allegation does not provide an adequate basis to find Miller's representation as amounting to an abandonment of Jackson's defense. Alcoholism, or even alcohol or drug use during trial, does not necessarily constitute a *per se* violation of the Sixth Amendment absent some identifiable deficient performance resulting from the intoxication. *See Burnett v. Collins,* 982 F.2d 922, 930 (5th Cir.1993) (failure to identify specific instances where counsel's alcoholism impaired performance warrants dismissal of Sixth Amendment claim); *Kelly v. United States,* 820 F.2d 1173, 1176 (11th Cir.) (failure to indicate specific evidence of how counsel's drug use impaired trial performance did not satisfy prejudice prong), *cert. denied,* 484 U.S. 966, 108 S.Ct. 458, 98 L.Ed.2d 398 (1987). Even where counsel is under significant psychological duress at trial, we require the defendant to present actual errors and omissions at trial that prejudiced his case. *See Bond,* 1 F.3d at 637.

In addition, Jackson's catalogue of Miller's errors and omissions does not allege conduct tantamount to no representation at all. Jackson does not claim that Miller was not present at his trial, never submitted trial motions or briefs, or failed to question any witnesses. Instead, Jackson's own petition reveals that Miller participated in the trial, cross-examined witnesses, and generally subjected the prosecution's case to meaningful

adversarial argument. *See Cronic,* 466 U.S. at 659, 104 S.Ct. at 2047.

 Similarly, Miller's alleged failure to adequately prepare for trial by not obtaining witness statements or transcripts of pretrial hearings does not constitute a *per se* violation of the Sixth Amendment.[5] *See United States v. Morrison,* 946 F.2d 484, 500 n. 3 (7th Cir.1991) (finding failure to investigate crucial witness not *per se* violation of Sixth Amendment where lawyer still presented argument at trial), *cert. denied,* 506 U.S. 1039, 113 S.Ct. 826, 121 L.Ed.2d 696 (1992). Although such an alleged oversight is potentially negligent, Jackson still must explain how this negligence resulted in actual errors at trial that prejudiced his defense. *See Bond,* 1 F.3d at 637; *Henderson v. Thieret,* 859 F.2d 492, 499 (7th Cir.1988) (even where counsel's preparation is constitutionally inadequate, defendant must demonstrate prejudice), *cert. denied,* 490 U.S. 1009, 109 S.Ct. 1648, 104 L.Ed.2d 163 (1989). Consequently, keeping in mind his more global claims of alcoholism and ill preparation, we review Jackson's specific allegations of trial error.

### 2. Failure to Impeach Government Witnesses Through Jackson's Address

 As an example of trial error, Jackson points to Miller's failure to pursue documentation demonstrating that Jackson had moved from the apartment where drug sales took place. According to the defendant, a government witness who placed Jackson at a cocaine sale also testified that the sale occurred at Jackson's apartment. Jackson asserts that documentation existed proving that by July 1988 he had moved from the apartment. Jackson argues that Miller should have used this documentation to impeach this testimony, as well as other testimony of his involvement in the conspiracy. If the jury disregarded this testimony, Jackson speculates that they would not have convicted him under Count Five of the indictment. In turn, this might have shortened the length of his presumed participation in the conspiracy, subjecting him to a lighter sentence.

Assuming that Miller's alleged omission constituted deficient representation, it is difficult to discern the reasonably probable prejudice arising from Jackson's asserted address. An initial matter, Jackson has not submitted any evidence to verify that such documentation existed. *See Barkauskas v. Lane,* 946 F.2d 1292, 1295 (7th Cir.1991) (petitioner establishing prejudice must present actual evidence of exculpatory testimony that counsel allegedly overlooked). In addition, it is difficult to see how Jackson's alternative address would seriously impeach this witness' testimony. The fact that Jackson's name no longer appeared on the lease does *not* undermine testimony that he was present at the apartment during the drug purchase. Consequently, we find no prejudice. *See United States v. Olson,* 846 F.2d 1103, 1110 (7th Cir.) (no prejudice where counsel declines to impeach testimony with prior inconsistent testimony if testimony would still substantially corroborate defendant's involvement in crime), *cert. denied,* 488 U.S. 850, 109 S.Ct. 131, 102 L.Ed.2d 104 (1988).

### 3. Failure to Impeach Government Witnesses Through Contradictions with Pretrial Testimony

 In addition, Jackson asserts that Miller failed to impeach the trial testimony of three government witnesses by raising the same witnesses' contradictory grand jury testimony. According to Jackson's petition, Turnage and Grandsberry had previously testified to the grand jury that Jackson participated in cocaine transactions on or about July 1988. However, at trial, they testified to Jackson's involvement in drug sales in December 1987. In a similar argument, Jackson asserts that Miller never confronted Billy Cannon with alleged contradictions from prior testimony to the grand jury. At trial, Cannon testified to Jackson's presence at early cocaine purchases with Mario Lloyd; according to the defendant, Cannon never mentioned Jackson's presence at sales in testimony to the grand jury. Finally, Jackson alleges that counsel never raised the contradictions between these witnesses' trial testi-

---

**5.** In addition, the trial record indicates that Jackson's counsel actively sought relevant grand jury transcripts and the government indicated its willingness to comply. Consequently, Jackson's bare assertion of his counsel's ill preparedness does not substantiate his claim.

mony and the indictment's allegation that Jackson sold cocaine in July 1988.

For the most part, however, the record belies Jackson's characterization of the testimony[6]; more importantly, the record reveals that Miller's cross-examination of these witnesses surpassed the constitutionally-required level of competence. During Turnage's cross-examination, Tr. 326–33, Miller effectively tested the witness' memory, and indeed, asked questions suggesting that Turnage had never mentioned Jackson to a federal law enforcement agent during an extensive conversation that occurred after Turnage began cooperating with the government, Tr. 330–33. Similarly, when cross-examining Grandsberry, Tr. 270–77, Miller challenged the witness' memory, Tr. 270–71, and more significantly, did in fact point out that Grandsberry never mentioned the defendant by name when testifying to the grand jury, Tr. 275–77. Likewise, Miller confronted Cannon with impeachment by omission as well during cross-examination, Tr. 221–27, pointing out that the witness had not mentioned Jackson to a federal agent, Tr. 224, and had not told a grand jury that Jackson was involved in a hand-to-hand cocaine delivery, Tr. 225–26. In light of the cross-examinations of these three witnesses, Miller sufficiently challenged their credibility and rendered effective assistance of counsel.[7]

### 4. Failure to Investigate and Assist in Rule 33 Motion

Jackson also argues that Miller's legal counsel was ineffective because he neither investigated Shelton's alleged recanted testimony nor helped the defendant to establish the veracity of the recantation. Following the trial, Jackson presented a handwritten statement allegedly from Shelton. However, we dismissed Jackson's claim in light of the lack of surprise of this information to the defendant, the dubious circumstances of the prison recantation, and the ample testimony remaining to convict Jackson.

In order to establish prejudice arising from a failure to investigate, the defendant carries the "'burden of supplying sufficiently precise information' of the evidence that would have been obtained had his counsel undertaken the desired investigation, and of showing 'whether such information ... would have produced a different result.'" *United States v. Kamel*, 965 F.2d 484, 499 n. 45 (7th Cir.1992) (quoting *United States ex rel. Cross v. DeRobertis*, 811 F.2d 1008, 1016 (7th Cir.1987)). However, Jackson only presents the conclusory assertion that Miller would have obtained some additional information from Shelton that would have dispelled this Court's suspicions of the recantation. At his most specific, Jackson postulates that Miller would have exposed unsubstantiated portions of Shelton's original testimony. These bare assertions do not demonstrate a reasonable probability that an investigation would have rendered Shelton's recantation more trustworthy. Furthermore, even if Miller could have presented a stronger case for Shelton's recantation, adequate testimony of Jackson's guilt remained to defeat his motion. *Walker*, 25 F.3d at 552–53 (finding that record provided

---

**6.** Contrary to Jackson's assertion, Grandsberry did not testify at trial that the defendant was present at a December 1987 cocaine deal, but rather that the deal took place at Jackson's apartment while Grandsberry waited outside. Tr. 240–41. Furthermore, also contrary to the defendant's representation, Cannon did testify to the grand jury that Jackson was present, as one of Lloyd's workers, at cocaine deals in Chicago. Cannon Grand Jury Tr. at 38.

**7.** Jackson presents additional claims relating to cross-examination that merit only brief discussion. Miller's alleged failure to question Shelton regarding his involvement in the drug conspiracy neither rendered the representation deficient nor altered the outcome of the trial. Shelton's par-

ticipation as both purchaser and later dealer was well developed at trial. Miller's alleged failure to use Jackson's phone records also did not cause prejudice. It is highly unlikely that the jury would have exonerated Jackson simply because his phone records revealed he did not use his home telephone to contact his drug connections in Milwaukee. Finally, in contrast to Jackson's claim, Shelton did not testify that the defendant sold cocaine directly to Shelton, but rather that the defendant sold the cocaine to Shelton's supplier, Gregory Hawkins. Tr. 9, 11–13. Consequently, there was no contradiction between Shelton's testimony and the government's position that Jackson sold cocaine to Hawkins.

adequate additional evidence to convict Jackson).

### 5. Failure to Adequately Support Objection at Sentencing Hearing

■ Jackson alleges that his ultimate sentence was prejudiced by Miller's failure to adequately object to the PSR holding Jackson accountable for cocaine distribution performed by co-conspirators. As Jackson notes, Miller's objection provided no meaningful discussion of legal precedent to support his position. Instead, the objection focused on factual matters and the trial record in order to demonstrate that Jackson could reasonably foresee only twelve to fifteen kilograms of cocaine. *See* Def.'s Obj. to PSR. Because Jackson has failed to demonstrate prejudice, we do not decide whether Miller's objection falls below the objective standard of reasonable performance.

■ Even if deficient because of the paucity of legal argument, a motion still will not violate the Sixth Amendment if its position would have lost regardless of the skill of argument. *United States v. Booker*, 981 F.2d 289, 294 (7th Cir.1992). In his amended petition, Jackson stresses that a conspirator's accountability must be limited to drug transactions to which the defendant evidenced some agreement. *See United States v. Edwards*, 945 F.2d 1387, 1397 (7th Cir.1991), *cert. denied*, 503 U.S. 973, 112 S.Ct. 1590, 118 L.Ed.2d 308 (1992). Jackson argues that the evidence of trial did not demonstrate that Lloyd's additional drug sales to Cannon or others were reasonably foreseeable within the meaning of *Edwards*.

■ The scope of the defendant's agreement to a conspiracy may be determined by the defendant's level of commitment to acts within that conspiracy as reflected by the defendant's words or conduct. *Edwards*, 945 F.2d at 1393. In particular, "engaging in a consistent series of smaller transactions throughout the life of the conspiracy" reflects a substantial level of commitment. *Id.* Testimony at trial placed Jackson at a series of drug sales to Cannon's network throughout a seven-month period. Testimony also revealed that Cannon's network purchased a total of well over fifty kilograms of cocaine from Lloyd's operation in regular increments during this period. Although Jackson personally delivered a relatively modest proportion of Cannon's purchases, the defendant's role provided access to knowledge of both the quantity and frequency of these sales. According to Cannon's testimony, Lloyd identified Jackson as a contact for these sales. In sum, the government easily met its burden of demonstrating that Jackson could reasonably foresee that Lloyd's operation would sell at least fifty kilograms of cocaine during the period he participated. Therefore, Miller's performance in objecting to the PSR did not violate Jackson's Sixth Amendment right to effective counsel.

### 6. Ineffective Counsel on Appeal

■ Finally, Jackson argues that Miller's failure to properly perfect Jackson's notice of appeal undermined his appeal of his Rule 33 motion for a new trial. In a convoluted argument, Jackson contends that had Miller continued to represent him on appeal, Miller would have avoided appellate counsel's purported error of conceding that Jackson shared a cell with Shelton. Jackson argues that this presumed fact moved the Seventh Circuit to reject Shelton's recantation.

We may quickly dispose of this claim under the prejudice prong of *Strickland*. Upon denying Jackson's previous petition for a rehearing, the Seventh Circuit noted that the dubious nature of Shelton's recant did not depend upon his sharing a cell with Jackson. *United States v. Walker*, 25 F.3d 540, 553 (7th Cir.), *cert. denied*, — U.S. —, 115 S.Ct. 531, 130 L.Ed.2d 434 (1994); *see United States v. Leibowitz*, 919 F.2d 482, 483 (7th Cir.1990), *cert. denied*, 499 U.S. 953, 111 S.Ct. 1428, 113 L.Ed.2d 480 (1991). Consequently, even if we were to accept Jackson's contention that he and Shelton never shared a cell, appellate counsel's alleged misstatement would not have prejudiced the outcome of his appeal.

### III. Conclusion

Taken together, Miller's purported missteps did not unconstitutionally prejudice Jackson, nor were some of the alleged "errors" even reflective of deficient performance. Thus, for the reasons stated above,

we deny the defendant's motion for relief pursuant to 28 U.S.C. § 2255. It is so ordered.