UNITED STATES of America, Respondent,

v.

Mario LLOYD, Charles Lloyd, Jairo Soto–Rodriguez, and Gustavo Calle, Petitioners.

Nos. 97 C 2799, 97 C 3020, 97 C 3137 and 97 C 3140. No. 89 CR 427.

United States District Court, N.D. Illinois, Eastern Division.

Oct. 22, 1997.

Zaldwaynaka L. Scott, Asst. U.S. Atty., U.S. Attorney's Office, Chicago, IL, for U.S.

Charles Lloyd, Pekin, IL, pro se.

Mario Lloyd, Chicago, IL, pro se.

Jairo Soto–Rodriguez, Miami, FL, pro se.

Gustavo Calle, Yazoo City, MS, pro se.

### MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge:

Raising a variety of claims, co-conspirators Mario Lloyd (Mario), Charles Lloyd (Charles), Jairo Soto–Rodriguez, and Gustavo Calle each filed a motion pursuant to 28 U.S.C. § 2255 asking that we amend, or in some instances vacate, the sentences we imposed on them for their roles in a cocaine distribution scheme. All four are acting *pro*

*se.* For the reasons given below, we grant the motion of Mario in part and deny it in part; we deny the motion of Charles; we grant the motion of Soto–Rodriguez in part and deny it in part; and we deny the motion of Calle.

## I. Background

Two opinions, *United States v. Walker*, 25 F.3d 540, 543–44 (7th Cir.1994), and *United States v. Soto–Rodriguez*, 7 F.3d 96, 97–99 (7th Cir.1993), give a full recital of the facts which underlie each petitioner's conviction. For present purposes a brief summary will suffice.

The Lloyd drug ring, operating out of Chicago, was responsible for the distribution of hundreds of kilograms of cocaine. Mario, for whom the operation is named, acted as its chief executive, and the group netted between $20 and $30 million and earned profits of approximated $2 million. Mario employed Calle, Soto–Rodriguez, and his brother Charles, and he compensated all of them handsomely for their loyalty and efforts. Even after meeting his payroll and paying his expenses, however, Mario still retained "fantastic sums of cash," *Walker*, 25 F.3d at 543, which prompted him to conceal the money through purchases of real estate, furs, and other luxury items.

A jury convicted Mario on one count of engaging in a continuing criminal enterprise (CCE), *see* 21 U.S.C. § 848, one count of conspiracy to distribute cocaine, *see id.* § 846, six counts of distributing cocaine, *see* 21 U.S.C. § 841(a)(1); 18 U.S.C. § 2, one count of conspiracy to defraud the United States, *see* 18 U.S.C. § 371, two counts of conducting monetary transactions with drug money, *see id.* § 1957(a), two counts of money laundering, *see id.* §§ 1956(a)(1)(B)(i), (ii), and two counts of structuring monetary transactions to avoid currency reporting requirements, *see* 31 U.S.C. §§ 5322(a), 5324(3). This Court sentenced Mario to life imprisonment and imposed on him a $26 million fine and the Seventh Circuit upheld the sentence on direct appeal. *See Walker*, 25 F.3d at 543.

A joint trial with Mario resulted in Charles's conviction by the jury on one count of conspiracy to distribute cocaine *see* 21 U.S.C. § 846, one count of distributing cocaine, *see id.* § 841(a)(1); 18 U.S.C. § 2, one count of conducting monetary transactions with drug money, *see* 18 U.S.C. § 1957(a), one count of money laundering, *see id.* §§ 1956(a)(1)(B)(i), (ii), and one count of structuring monetary transactions to avoid currency reporting requirements, *see* 31 U.S.C. §§ 5322(a), 5324(3). This Court sentenced Charles to 270 months in prison and imposed on him a $100,000 fine, and the Seventh Circuit upheld the sentence on direct appeal. *See Walker*, 25 F.3d at 543.

Soto–Rodriguez and Calle were tried together, apart from the Lloyd brothers, and the jury convicted both on one count of conspiracy to distribute cocaine, *see* 21 U.S.C. § 846. The jury also convicted Calle on one count of possession with intent to distribute cocaine, *see id.* § 841(a)(1); 18 U.S.C. § 2. This Court sentenced Soto–Rodriguez to 210 months in prison and Calle to 293 months in prison, and the Seventh Circuit upheld both of these sentences on direct appeal. *See Soto–Rodriguez*, 7 F.3d at 97.

## II. Procedural Default

Habeas corpus is not a substitute for direct appeal, so a federal prisoner who asks that this Court vacate or correct his sentence must explain both his failure to raise on direct appeal the supposed errors which taint his conviction ("cause") and the actual harm which resulted from that failure ("prejudice"). *See Belford v. United States*, 975 F.2d 310, 313 (7th Cir.1992), *overruled on other grounds by Castellanos v. United States*, 26 F.3d 717 (7th Cir.1994). In addition, a prisoner may not raise ordinary, non-constitutional errors in his habeas petition except to the extent that those errors form the foundation for an allegation of ineffective assistance of trial counsel. *See Belford*, 975 F.2d at 313 & n. 1. With these principles in mind, we proceed to the petitions of the individual prisoners.

## III. Mario Lloyd

### A. Ineffective Assistance of Counsel

Mario first claims that his trial counsel, F. Lee Bailey, rendered constitutionally ineffec-

tive assistance, and he asks that we grant him a new trial. According to Mario, Bailey was derelict for not giving an opening statement [1] and for using "canned" cross-examinations of the government's witnesses, both of which Mario implies were the result of Bailey's alcohol consumption during the trial.[2] In support of his allegation that Bailey was drunk, Mario submits two affidavits in which he states that he smelled alcohol on Bailey's breath and observed Bailey sleeping during the trial; Mario's brief adds that Bailey was intoxicated, kept a "thermos type container" with him, and often asked about a "watering hole." Pet'r Br. at 4. Mario also claims that Charles's trial counsel, Edward Genson, is willing to submit at this Court's request an affidavit swearing to these same allegations, and Mario asks that we order this submission. *See* Pet'rs Reply at 5 n. 2, 9 (Aff. of Mario Lloyd).

■ The government contends that Mario cannot establish cause for his failure to raise his ineffective assistance claim on direct appeal. We disagree. A prisoner may, as the government acknowledges, wait to raise his ineffective assistance claim for the first time in his § 2255 filing if it "requires examination of facts outside the trial record." Gov't. Resp. at 19 (citing *Guinan v. United States,* 6 F.3d 468, 471 (7th Cir.

1993)). This rule is a sensible one, for if the ineffectiveness is not apparent from the face of the record, the appellate court—with only the record before it—will be hard pressed to evaluate the claim. *Compare Guinan,* 6 F.3d at 471, *and Bond v. United States,* 1 F.3d 631, 635 (7th Cir.1993), *with Olmstead v. United States,* 55 F.3d 316, 320 (7th Cir. 1995) (holding that the prisoner procedurally defaulted his ineffective assistance claim when the complete factual basis for the claim appeared in the trial record), *and Dugan v. United States,* 18 F.3d 460, 464 (7th Cir.1994) (same). Mario's allegation that his trial counsel was drunk during the proceedings constitutes, without question, a fact outside the record [3] which bears on his ineffective assistance claim. Mario has thus explained his failure to raise his ineffectiveness claim on direct appeal, and we now turn to whether he can likewise clear the prejudice hurdle.

■ To establish prejudice, Mario "must shoulder the burden of showing . . . that the errors at his trial . . . worked to his *actual* and substantial disadvantage. . . ." *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 1596, 71 L.Ed.2d 816 (1982). This Mario does not do. His motion states only that Bailey's failure to give an opening statement left the jury without a "road map" of the case [4] and that Bailey's cross-examina-

---

1. As a technical matter, Kenneth Fishman, another of Mario's lawyers, actually waived the opening statement. *See* Tr. 36 to 36–a.

2. We note that at no time did Bailey appear to us to be intoxicated.

3. We disagree with the government's submission that the "defendant has not presented any extrinsic evidence for the Court's consideration in reviewing his petition" and that "it appears that the defendant's claims can be resolved without reference to facts outside the record of this case." Gov't. Resp. at 19–20. The government's argument is difficult to square with the fact that the its only response to Mario's intoxication claim is an appeal to this Court's observation of Bailey, *id.* at 24, which certainly does not appear in the trial record.

4. Waiving the opening statement may be the best, or at the very least, an acceptable strategy for an attorney to adopt. *See, e.g.,* PETER MURRAY, BASIC TRIAL ADVOCACY 98 (1995) ("In criminal cases tactical considerations of the defense may sometimes weigh in favor of waiving the open-

ing. . . .");  *United States v. Mealy,* 851 F.2d 890, 908 (7th Cir.1988) ("[T]he mere fact that counsel did not make an opening statement is not sufficient for a defendant to prevail on a claim of ineffective assistance. Whether to make an opening statement to the jury is at the discretion of trial counsel.") (citing *Crisp v. Duckworth,* 743 F.2d 580, 587 (7th Cir.1984)). This was arguably true in this case. Mario's trial was a family affair—his brother Charles, his mother Connie Walker, and his sister Antoinette Lloyd were all codefendants, *see Walker,* 25 F.3d at 543—and his attorneys may have believed it worthwhile to rely on his codefendants' opening statements rather than boring the jury by reciting a duplicative and cumulative opening statement of their own. In addition, one of the primary purposes of the opening statement is to introduce the attorney to the jurors and to bolster his credibility, *see* MURRAY, *supra,* at 99–100, but this may have been unnecessary for Mario's defense team in light of Bailey's fame, *see, e.g., New twist revives Sheppard case,* CHICAGO TRIBUNE, Aug. 24, 1989, at 29 (describing "celebrated criminal lawyer" F. Lee Bailey's successful defense of Dr. Samuel H. Sheppard): Marc Peyser & Gregory

tions were "canned." Pet'r Mot. at 3. Mario neither explains the theory of the case that Bailey should have presented to the jury in his opening statement nor elucidates the information Bailey might have elicited from witnesses had his cross-examinations been better. Mario thus gives us no basis to infer that Bailey's conduct at trial left some important stone unturned or some thematic question unanswered in the jurors' minds. In short, Mario has not demonstrated anything near the deprivation of "fundamental fairness" which he must show before we will consider his underlying claims. *Murray v. Carrier*, 477 U.S. 478, 494, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *see generally Walker*, 25 F.3d at 549 (describing the "mass of . . . evidence" against Mario).

■ In any event, we reject Mario's ineffective assistance claim on the merits. To prove ineffective assistance under the now familiar standard of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), Mario must establish both that Bailey's performance was deficient and that Mario probably would have been found not guilty absent Bailey's errors. While Mario's linkage of Bailey's intoxication (if true) with his supposed errors at trial does help to "rebut the strong presumption of attorney competence and convince the Court that [Bailey's] alleged errors were uninformed blunders rather than strategic mistakes," *United States v. Jackson*, 930 F.Supp. 1228, 1233 (N.D.Ill.1996) (citing *United States v. Taglia*, 922 F.2d 413, 417–18 (7th Cir.1991)), Mario again—for the reasons stated above [5] —fails to establish the prejudice necessary to his claim. *See, e.g., Barkauskas v. Lane*, 946

F.2d 1292, 1295 (7th Cir.1991) ("[T]he party must present evidence, not mere conclusory allegations, that counsel overlooked exculpatory testimony."); *United States v. Asubonteng*, 895 F.2d 424 429 (7th Cir.1990) ("This court has consistently held that such conclusory allegations do not satisfy *Strickland*'s prejudice component.").

Further, we note that Bailey was not Mario's only attorney. In a case such as this one, where the ineffective assistance claim requires this Court to distinguish between the "strategic mistakes" of effective counsel and the "uninformed blunders" of ineffective counsel, *Jackson*, 930 F.Supp. at 1233, we believe that a petitioner with multiple attorneys must, as a practical matter, make a particularly strong showing that counsel's putative errors were of the latter type. Thus, even if Bailey's trial prowess arguably fell below the level which *Strickland* requires, Kenneth Fishman's ability to monitor and correct any of Bailey's mistakes makes Mario's case a tougher one to make. *Cf. Stoia v. United States*, 109 F.3d 392, 398–99 (7th Cir.1997) (discussing multiple attorneys and ineffective assistance in the conflict of interest context).

## B. Double Jeopardy

■ Mario next argues that his conviction for both CCE, *see* 21 U.S.C. § 848, and narcotics conspiracy, *see id.* § 846, violated the Double Jeopardy Clause of the Fifth Amendment. *See Rutledge v. United States*, 517 U.S. 292, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996) (holding that conspiracy is a lesser included offense of CCE and that separate judgments of conviction for those two crimes

Beals, *Hunting the 'fugitive'*, Newsweek, Feb. 12, 1996 (nothing that until the murder trial of O.J. Simpson, another of Bailey's clients, Bailey's Sheppard defense was known as concerning "The Crime of the Century").

5. The Seventh Circuit has not yet decided whether the "prejudice" required to overcome procedural default is the same as the "prejudice" component of ineffective assistance of counsel claims. *See Fern v. Gramley*, 99 F.3d 255, 259–60 n. 4 (7th Cir.1996). Mario's petition does not raise such fine distinctions, however, and we hold that his failure to do anything more than complain about Bailey's trial conduct is clearly insufficient to demonstrate prejudice under ei-

ther standard. *See United States v. Davis*, Nos. 97 C 2924, 93 CR 574, 1997 WL 473873, at *3 (N.D.Ill. Aug.14, 1997) ("Whether there was prejudice for purposes of avoiding a procedural default is also intertwined with the merits question of whether a petitioner has shown ineffective assistance of counsel; both require us to determine whether counsel's putative errors affected the outcome. Accordingly, we discuss [the prisoner's] claims below and conclude that they are meritless; as a result, not only has he failed to show cause and prejudice—and thus fails to avoid procedural default of his constitutional claims—but in the alternative, his claims would fail on the merits even absent a procedural bar.").

constitutes double jeopardy). The government concedes the double jeopardy violation,[6] and we agree. Mario's conspiracy conviction merged into his CCE conviction, *see, e.g., United States v. Paulino*, 935 F.2d 739, 751 (6th Cir.1991), and we accordingly vacate Mario's conspiracy conviction, as well as the life sentence and any fines stemming from that conviction, and we order that any special assessment which he paid pursuant to that conviction be returned to him. Our order is, however, conditional: in the event that Mario is ever successful in overturning his CCE conviction on grounds which do not call the conspiracy conviction into question, we grant to the United States Attorney the right to petition this Court for reinstatement of the conspiracy conviction, sentence, fines, and special assessment. *See Rutledge*, 517 U.S. at ——, 116 S.Ct. at 1250 (discussing this practice and citing cases).

## C. Sentencing Errors

■ Mario maintains—and again the government concedes—that several of the sentences reflected in his judgment and commitment order exceed the maximum penalties prescribed by law.[7] *See Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir.1996). We agree. Accordingly, we hereby vacate all ten of the unlawful life sentences and replace them with the maximum permissible sentences: forty years imprisonment for counts two, five, and six, *see* 21 U.S.C. § 841(a)(1); five years imprisonment for count 9, *see* 18 U.S.C. § 371; ten years imprisonment for counts 10 and 25, *see id.* § 1957(a); twenty years imprisonment for counts 26 and 28, *see id.* § 1956(a); and five years imprisonment for counts 27 and 29, *see id.* 31 U.S.C. § 5324(3).

We observe that a recent case in this district employed a different approach. *See Burgos v. United States*, 968 F.Supp. 380 (N.D.Ill.1997). The district judge in that case sentenced Burgos to 36 years in prison for an offense subject to an 8 year maximum sentence, and on habeas the government conceded that the sentence was unlawful. *See id.* at 383. The judge in *Burgos*, examining Burgos's ineffective assistance of counsel claim stemming from this mistake, reasoned that he failed to show prejudice, as he was currently serving a concurrent 36 year sentence for another offense charged by the indictment—and thus the error would not " 'significantly' affect his term of imprisonment." *Id.* at 384 (quoting *Durrive v. United States*, 4 F.3d 548 (7th Cir.1993)). By contrast, we have vacated 10 of Mario's life sentences even though his concurrent CCE life sentence remains.

We believe that our approach—vacating sentences imposed in violation of the U.S. Code even though this will not shorten the petitioner's stay in prison—is the better one. First, we do not believe that *Durrive*, which simply held that minor sentencing defects (e.g. the "routine" adjustment of two or three offense levels) cannot establish ineffective assistance of counsel on collateral attack, 4 F.3d at 551, supports the *Burgos* approach. Nowhere does *Durrive* purport to address statutory maximums, and we are unable to locate any other cases which use *Durrive* in this way. In fact, no Seventh Circuit case after *Durrive* has questioned a habeas court's ability to correct a sentence which exceeds the maximum. *See, e.g., Prewitt*, 83 F.3d at 816 ("To succeed on a § 2255 petition a convicted defendant must show that the district court sentenced him ... in excess of the maximum authorized by law....") (citing *Theodorou v. United States*, 887 F.2d 1336, 1338 n. 2 (7th Cir.1989)). We do not think that *Durrive* can be read to state that "challenges to *sentencing errors* must be raised on direct appeal or not at all." *Burgos*, 968

---

**6.** The government does not mention Mario's possible procedural default of this issue. Procedural default operates very much like an affirmative defense: it allows the government to assert that a habeas petitioner has waived his right to present certain issues, but the government may decline to make this argument. *See, e.g., Doe v. United States*, 51 F.3d 693, 699 (7th Cir.1995); *Fagan v. Washington*, 942 F.2d 1155, 1157 (7th Cir.1991) (discussing "waived waiver"). Where, as here, the government simply concedes the correctness of a portion of a habeas petition, we infer that the government waives the petitioner's procedural default, and we therefore address the merits of the petitioner's claims.

**7.** It is unclear why the judgment and commitment order reflects these sentences, but it appears to be the result of a clerical error.

F.Supp. at 383 (citing *Martin v. United States*, 109 F.3d 1177, 1178 (7th Cir.1996) (per curiam)) (emphasis added). Instead, we read *Durrive* as holding that minor "arguments *based on the Sentencing Guidelines* must be raised on direct appeal or not at all." *Martin*, 109 F.3d at 1178 (citing *Scott v. United States*, 997 F.2d 340 (7th Cir.1993)) (emphasis added). Mario's claim, like Burgos's, relies on the U.S. Code, of course, not on the Sentencing Guidelines.

*Durrive* relied heavily on the fact that a constitutionally effective attorney's sentencing argument, which varies in quality between being "superior" and having "[s]mall failings," might swing the defendant's offense level two or three points one way or the other. *Durrive, 4 F.3d* at 550. From this the Seventh Circuit reasoned that small sentencing errors do not prejudice a defendant, leading it to the conclusion that an attorney who fails to make meritorious objections at sentencing as to minor matters does not provide constitutionally ineffective assistance cognizable on collateral attack. *See id.* Here, by contrast, the quality of an attorney's advocacy ought to be irrelevant; no court should ever impose on a defendant a sentence beyond the maximum. *See, e.g., Saleh v. United States*, No. 94–1957, 1995 WL 496675, at *2 (6th Cir. Aug.18, 1995) (upholding the district court's § 2255 decision to reduce a 97 month sentence to the 96 month maximum even though this left the defendant with other 97 month sentences).

In addition, *Durrive* itself recognized that certain sentencing defects are "fundamentally unfair" and are thus cognizable on collateral attack. *Durrive,* 4 F.3d at 551. We believe that even if *Durrive* applies here, all sentences repugnant to the Code are of that nature. Every defendant, whether or not he faces a concurrent sentence, is entitled to be sentenced within the limits set by Congress, and § 2255 explicitly grants the District Courts the power and, we believe, the duty to correct sentences which violate this principle. 28 U.S.C. § 2255 (stating that a prisoner may move for correction of a sentence "in excess of the maximum authorized by law"); *see generally United States v. King*, No. 97 C 1135, 1997 WL 223057, at *5 (N.D.Ill. Apr.29, 1997) (emphasizing the importance of distinguishing between sentencing challenges based on the Guidelines and those based on the Code).

Second, the *Burgos* approach may waste judicial resources and create confusion. If, for example, Burgos is somehow later successful in challenging his first 36 year sentence or the conviction which underlies it he will still be left with his second (clearly unlawful) 36 year sentence, and, as a *pro se* litigant, *see Burgos,* 968 F.Supp. at 382. Burgos may find it difficult to convince a court to hear a second habeas petition. *See* 28 U.S.C. § 2255 (limiting successive petitions). We think it better to "clean up" the judgment and commitment order now.

### D. Other Claims

Mario alleges several other improprieties, including our failure to voir dire a jury member, our refusal to grant him a mistrial, and our imposition of a fine on him which is so large that he says he cannot pay it, but he offers absolutely no explanation as to why he did not raise these claims on direct appeal. We hold that he procedurally defaulted each of them.

Mario also raises two claims—a *Brady* violation and allegedly inappropriate arguments made by other defense attorneys—which the Court of Appeals has already addressed, *see Walker*, 25 F.3d at 545; *United States v. Lloyd*, No. 96–3261, 1997 WL 471339, at *1 (7th Cir.1997), and which Mario may not relitigate. *See Taglia*, 922 F.2d at 418.

### IV.  Charles Lloyd

Charles makes several arguments in his § 2255 petition, and he has invoked the magic words "ineffective assistance of appellate counsel," thereby allowing us to reach the merits of his claims.[8] We conclude that his

---

**8.** Ordinarily, when a petitioner alleges ineffective assistance of appellate counsel as cause for his procedural default, we evaluate his claim by applying *Strickland*'s ineffective assistance of counsel test, the second prong of which requires him to show how his counsel's supposed errors prejudiced him. Our prejudice inquiry, in turn, requires that we determine whether the result of some aspect of the proceeding would have been different had his counsel made the arguments he

claims are without merit, and we thus hold that he procedurally defaulted them and that we would, even absent this default, deny his petition.

## A. Sentencing Arguments

Charles's first set of arguments, which raises two sentencing issues, is problematic. As we detailed above, Seventh Circuit case law limits a habeas petitioner's ability to raise sentencing issues on collateral review: "[T]he sort of increase produced by a few levels' difference in sentencing calculations cannot be raised indirectly on collateral attack by complaining about counsel's work." *Martin,* 109 F.3d at 1178. The Seventh Circuit has specified that small sentencing errors do not produce the sort of prejudice *Strickland* contemplates, *see Durrive,* 4 F.3d at 551, and if Charles cannot show ineffective assistance then he fails to overcome his procedural default.

■ We have previously described some of the uncertainties that the rule of *Durrive* (as affirmed in *Martin*) presents, *see United States v. Tai,* 972 F.Supp. 434, 438 n. 4 (N.D.Ill.1997), and Charles's petition poses yet another: does *Durrive*'s prohibition against a habeas petitioner using a minor sentencing defect to establish prejudice for an ineffective assistance of counsel claim also bar relief to a petitioner complaining of *multiple* minor defects? This is a question of first impression in this circuit.

Charles makes two basic sentencing claims. First, he argues that we should have held him accountable for between 15 and 50 kilograms of cocaine (thereby giving him an offense level of 34) rather than for over 50 kilograms of cocaine (which gave him an offense level of 36). *See* Pet'r Attach. A at 6. He also contends that we should have made specific findings about the amount of cocaine for which he was responsible. *See* Pet'r Attach. B at 3. Second, he argues that he was not a manager or supervisor in the Lloyd drug ring and that we should not have enhanced his offense level by two points for that role. *See* Pet'r Attach. C at 1. In sum, he maintains that his offense level should

have been 34, rather than 38, and that his sentencing range should have been between 151 and 188 months, rather than between 235 and 293 months. We sentenced him to 270 months. If he is correct about both claims, Mario's sentence is as many as 119 (270–151) months—nearly 10 years—too long, but it is more likely about 100 (270–170) months too long, given that we sentenced him near the midpoint of the original sentencing range and it is fair to assume that we would impose a similar sentence in the new range. *See Gonzalez v. United States,* 967 F.Supp. 326, 332 (N.D.Ill.1997) (making a similar assumption for purposes of discussion).

*Durrive* specifies that a small sentencing error cannot establish prejudice under *Strickland* but warns that "grave" or "rather appreciable" errors can demonstrate prejudice. *See Durrive,* 4 F.3d at 551. This dichotomy gives rise to a problem of characterization. Taken individually, there is no question that Charles's claims, which each complain about a two point offense level adjustment, fall under *Durrive's* dominion. But read holistically, Charles's petition complains that his sentencing attorney was completely ineffective: of the three essential elements of Guidelines-era sentencing (base offense level, adjustments, and criminal history), Charles claims that his attorney bungled the only two which were at issue in his case. In which light are we to view this situation?

What direction we gleam from *Durrive* itself points towards the latter approach. *Durrive* speaks of adjusting "the offense level by two or three steps" as being "exactly the routine decision that is supposed to be handled at sentencing and on direct appeal." *Id.* It continues: "Before the advent of the Sentencing Guidelines, no one would have dreamed that choices influencing the term of imprisonment within such a narrow range could be relitigated on collateral attack." *Id.* The instant situation is different. Charles is not pointing to one minor error and counting on the Guidelines' codification of sentencing factors to make his attack possible. Instead, he attacks his attorney's entire sentencing performance, which he argues cost him near-

omitted—and the only way to do so is to evaluate the merits of his claims.

ly 10 years of extra jail time. Petitioners used habeas for this purpose prior to the enactment of the Sentencing Guidelines, *see, e.g., United States v. Johnson,* 658 F.2d 1176, 1182 (7th Cir.1981), and we accordingly do not believe that *Durrive* applies here.

■ This does not mean of course, that we have relieved Charles of his burden of showing prejudice in order to obtain the relief he desires; we merely hold that *Durrive* does not bar him from attempting to do so. This analytic distinction will be of cold comfort to Charles, however, since he fails to demonstrate that he was in any way prejudiced by his counsel's supposed errors.

Charles's first claim, that we based his sentence on an erroneously large quantity of drugs, appears to rest on his belief that the testimony of only one witness, Troy Shelton, implicated him in drug activities. *See* Pet'r Reply at 3. Charles argues that we should not believe Shelton's testimony (because prosecutors gave Shelton reason to lie by granting him special treatment) and that, regardless, the testimony of one witness is insufficient to condemn him.

As support, Charles resorts to first principles: "One witness shall not rise up against a man for any iniquity, or for any sin, in any sin that he sinneth; at the mouth of two witnesses, or at the mouth of three witnesses, shall the matter be established." *See id.* at 3–4 (citing Deut., 19:15); *see also* Matt, 18:16 ("that in the mouth of two or three witnesses every word may be established"), *quoted in Cramer v. United States,* 325 U.S. 1, 24 n. 36, 65 S.Ct. 918, 930 n. 36, 89 L.Ed. 1441 (1945). We have no doubt that the so-called two witness requirement, which is at least in part the manifestation of ancient concerns about evidence reliability, *see* Irene Merker Rosenberg & Yale L. Rosenberg, *"Perhaps What Ye Say Is Based Only on Conjecture"—Circumstantial Evidence, Then and Now.* 31 HOUS.L.REV. 1371, 1387 (1995), has exerted a strong influence on American law.[9] *See, e.g.,* U.S. CONST. art. III, § 3 (requiring two witnesses in treason cases). This does not mean, however, that the whole of Deuteronomy is "good law" today. *See, e.g., State v. Cabrera,* No. 92AP-1028, 1993 WL 63883, at *3 (Ohio App. 10 Dist.1993) (unpublished opinion) ("Deuteronomy 19:15 . . . is not the law of the state of Ohio or, to our knowledge, of any other state."); Rosenberg & Rosenberg at 1380 (discussing Deuteronomy's absolute and obviously outdated prohibition on the use of all circumstantial evidence). No modern legal principle prevents the testimony of one witness from damning a defendant.

The government, at sentencing, provided ample evidentiary support for both our findings as to the amount of cocaine for which Charles was accountable, *see* Sent. Tr. at 3–6, and as to Charles's management role in the drug ring, *see* Sent. Tr. at 4–5, 8–9. None of Charles's invective against Shelton casts any doubt on the correctness of those holdings or convinces us that a new inquiry into Shelton's credibility would be profitable. Accordingly, Charles has failed to show that he was in any way prejudiced by his attorney's failure to raise the sentencing issues on appeal. We hold that he procedurally defaulted these claims and that they are deficient on the merits.

### B. Other Claims

■ Charles next argues that his appellate attorney was ineffective for neglecting to appeal the sufficiency of the evidence supporting his conviction for possessing cocaine with the intent to distribute it. We find this claim meritless. Even Charles acknowledges that the evidence at trial showed that Shelton delivered 10 kilograms of cocaine to Charles's house, *see* Pet'r Attach. D at 2, and the other evidence at trial established that Charles, as one of Mario's distributors, had at least constructive possession over far more cocaine than that.

■ Charles also argues that his appellate attorney provided him with ineffective assistance by not raising before the Seventh

---

9. Other Deuteronomy teachings have had similar impact. *See, e.g.,* Deut. 24:16 ("The fathers shall not be put to death for the children, neither shall the children be put to death for the fathers. . . .") U.S. CONST. art. III § 3 ("no Attainder of Treason shall work Corruption of Blood. . . .").

Circuit a prosecutor's improper comment[10] regarding his decision not to testify.[11] We hold that the curative instruction we gave at the time cured any error, *see United States v. Ashford,* 924 F.2d 1416, 1423 (7th Cir. 1991), and that the weight of the evidence against Charles rendered the error harmless in any case, *see United States v. Perez,* 870 F.2d 1222, 1229 (7th Cir.1989).

Finally, weeks after he finished briefing his § 2255 petition, Charles asked that this Court appoint counsel to represent him. We do not believe that any of his claims are even arguably meritorious, so the appointment of counsel would not serve any purpose. We therefore deny his motion.

## V. Soto–Rodriguez

### A. Quantity of Drugs

■ Soto–Rodriguez first complains that this Court erred in imposing on him a sentence which held him accountable for a quantity of drugs unforeseeable to him at the time of the conspiracy. Soto–Rodriguez explains the cause for his procedural default of (as well as the substantive basis for) this claim by reference to Shelton's jailhouse recantation of his trial testimony.[12] We find this insufficient. Soto–Rodriguez has not provided us with a copy of Shelton's recantation, and the account of it to which he refers us, *see Walker,* 25 F.3d at 548–49 (doubting the "truth or trustworthiness of Shelton's alleged recantation"), only concerns Shelton's testimony against co-conspirator Ronald Jackson, who we tried separately from Soto–Rodriguez. And while Charles did submit an affidavit from Shelton concerning Shelton's untruthful testimony, that affidavit refers exclusively to Shelton's testimony at Charles's trial, which was (again) separate from Soto–

Rodriguez's. We do not see the possible relevance to Soto–Rodriguez of Shelton's supposed admission of wrongdoing at other trials.

We would, in any event, deny Soto–Rodriguez's claim on the merits. Shelton was not the only witness against Soto–Rodriguez, and the government presented "an abundance" of evidence proving Soto–Rodriguez's drug activities. *Soto–Rodriguez,* 7 F.3d at 90–100. Soto–Rodriguez's sentence would not change even if, in abeyance of reality, we believed that Shelton's trial testimony was a complete fabrication.

### B. Sentence in Excess of Maximum

■ Soto–Rodriguez next contends that his sentence exceeds the statutory maximum. To overcome his procedural default he alleges ineffective assistance of counsel. As we noted during our analysis of Mario's petition, this type of claim avoids *Durrive* and we examine the merits to determine whether Soto–Rodriguez has demonstrated prejudice.

He has not. His claim rests mostly on a confused reading of several amendments to the drug laws, but it boils down to this: he believes that, as of the time of his offense, the maximum penalty for his crime of conviction was 15 years—but we sentenced him to 17 1/2 years. For the 15 year maximum, he cites *United States v. McNeese,* 901 F.2d 585, 602 n. 6 (7th Cir.1990), but he seems not to understand that drug sentences vary with the amount of drugs at issue and that the court in *McNeese* held the defendant responsible for far less cocaine than he. The actual maximum sentence for Soto–Rodriguez's crime was life, *see* 21 U.S.C. § 841(b)(1)(A)(ii)(II), a fact which renders his claim frivolous.

---

**10.** Since we ordered the prosecutor's comment stricken from the record, it does not appear in the trial transcripts of this case. According to Charles's account, which we take at face value for the sake of argument, Assistant United States Attorney Andrea Zopp told the jury that "we don't indict innocent people and if they were innocent then why didn't they take the stand?" Pet'r Am.Br. at 2. We ordered the comment stricken and admonished the jury that Charles had a right not to take the stand and that they were to ignore the prosecutor's comment. *See id.* at 3.

**11.** The government completely ignores this claim.

**12.** For this reason, Soto–Rodriguez escapes *Durrive,* since that case only applies to sentencing errors raised on habeas via ineffective assistance of counsel claims. *Durrive,* 4 F.3d at 550 (warning against "the sixth amendment becom[ing] the means of vindicating on collateral attack all manner of arguments under rules and statutes," as "almost any error at sentencing may be recast as a challenge to counsel").

## C. Supervised Release

Soto–Rodriguez's final claim is that we exceeded statutory limitations by sentencing him to 10 years of supervised release.[13] We agree.

■ Prior to 1980, a number of courts interpreted 21 U.S.C. § 846, the conspiracy statute which criminalized Soto–Rodriguez's conduct, as allowing the imposition of supervised release or special parole terms. *See, e.g., United States v. Burman,* 584 F.2d 1354, 1356–58 (4th Cir.1978). In 1980, the Supreme Court disagreed with this interpretation and held that § 846, by its terms and in light of the rule of lenity, did not authorize special parole terms, *see Bifulco v. United States,* 447 U.S. 381, 387–402, 100 S.Ct. 2247, 2252–60, 65 L.Ed.2d 205 (1980), and later cases applied this holding to supervised releases, *see, e.g., United States v. Cardenas,* 917 F.2d 683, 688 (2d Cir.1990) (collecting cases). The Court recognized, however, that its construction of § 846 might be out of touch with "present legislative expectations," and it invited Congress to amend the statute. *Bifulco,* 447 U.S. at 402, 100 S.Ct. at 2259–60. Congress did so eight years later, *see* Anti–Drug Abuse Act of 1988, Pub.L. No. 100–690, 102 Stat. 4377 (codified at 21 U.S.C. § 846), and the current version of the statute allows for supervised release. *See McNeese,* 901 F.2d at 602 n. 6.

■ The amended statute, however, does not apply to Soto–Rodriguez, since he committed his crimes in early 1988 and Congress did not amend § 846 until November of that year. *See, e.g., United States v. Golden,* 954 F.2d 1413, 1417 (7th Cir.1992) (explaining the Ex Post Facto Clause's prohibition against applying to prior conduct a later amendment which increases the authorized punishment for that conduct). Section 846 thus provides no basis for Soto–Rodriguez's supervised release.

■ Another provision of the Code, however, allows a court, when imposing any sentence, to "include as part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment," 18 U.S.C. § 3583, and this provision predates Soto–Rodriguez's participation in the conspiracy. Under § 3583, Soto–Rodriguez is eligible for a maximum of 5 years of supervised release, *see id.* §§ 3583(b)(1) (authorizing supervised release for a Class A felony), 3559 (describing a Class A felony as one punishable by life imprisonment), and we hereby reduce his current 10 year term of supervised release to 5 years. *See, e.g., United States v. Osborne,* 931 F.2d 1139, 1146 (7th Cir.1991) ("[W]e hold that 18 U.S.C. § 3583 authorizes a district court to impose a term of supervised release in sentencing a defendant ... who has been convicted of a narcotics conspiracy under 21 U.S.C. § 846 which was operative after the November 1, 1987, effective date of 18 U.S.C. § 3583, but terminated prior to the 1988 amendment of 21 U.S.C. § 846").

## VI. Gustavo Calle

Calle brings a number of issues to our attention in his petition and points to the ineffectiveness of his appellate counsel as his cause for not raising them previously. We hold that each of his arguments are meritless and he that he thus fails to establish prejudice for his default.

Calle first argues that an argument made by the Lloyd brothers—that the government obtained their convictions through the use of perjured testimony and in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)—applies with equal force to his case. The Seventh Circuit considered the Lloyds' *Brady* claim and found it meritless, *see Lloyd,* 1997 WL 471339, at *1, and Calle's is meritless for the same reasons.

Calle next offers several bald accusations—that his attorney conspired with the prosecutors, that his attorney had a conflict of interest, that he was discriminated against, and that his arrest somehow violated the Fourth Amendment—despite his recognition of his burden to make "specific factual allegations" as to these claims. Pet'r Br. at E (citing cases). His complete failure to

---

**13.** Once again, the government completely ignores this clear and clearly labeled claim. We consider this a waiver of Soto–Rodriguez's possible procedural default.

750

offer any supporting facts leaves with no choice but to find his claims meritless.

Calle also claims that his conviction violated the Commerce Clause as construed in *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). Given that *Lopez* concerned wholly intrastate activities and that Calle's role in the Lloyd drug ring was to import cocaine from New York for sale in Illinois, *see Soto–Rodriguez,* 7 F.3d at 98. Calle's argument is frivolous. *See generally Champion v. Ames,* 188 U.S. 321, 326, 23 S.Ct. 321, 323, 47 L.Ed. 492 (1903) ("We are of the opinion that lottery tickets are subjects of traffic, and therefore are subjects of commerce, and the regulation [or prohibition] of the carriage of such tickets from state to state ... is a regulation of commerce among the several states.").

Calle's final attack on his conviction and sentence stems from his belief that Congress created the Sentencing Guidelines in violation of Article I, Section 7 (describing the passage of bills) and Article III, Section 3 (concerning treason) of the Constitution. We are not sure what to make of this claim, and we respond only by observing that the Supreme Court has upheld the constitutionality of the Sentencing Commission and of the Sentencing Guidelines. *See Mistretta v. United States,* 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989).

## VII. Conclusion

For the foregoing reasons, we grant in part and deny in part the motion of Mario Lloyd; we deny both of the motions of Charles Lloyd; we grant in part and deny in part the motion of Jairo Soto–Rodriguez; and we deny the motion of Gustavo Calle. It is so ordered.