# In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 03-3334

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MARIO HOWARD LLOYD,

*Defendant-Appellant.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 89 CR 427—**Marvin E. Aspen**, *Judge.*

---

SUBMITTED JANUARY 21, 2005—DECIDED MARCH 1, 2005

---

Before EASTERBROOK, MANION, and ROVNER, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* More than a decade ago, Mario Lloyd was convicted of multiple federal charges and sentenced to 15 terms of life imprisonment. We affirmed his convictions and those of several confederates. See *United States v. Walker*, 25 F.3d 540 (7th Cir. 1994); *United States v. Soto-Rodriguez*, 7 F.3d 96 (7th Cir. 1993). On collateral review under 28 U.S.C. §2255, the district judge concluded that the correct number of life sentences should have been 5 rather than 15, and Lloyd was resentenced accordingly, see *United States v. Lloyd*, 983 F. Supp. 738 (N.D. Ill. 1997)—though the change made no practical difference, for 1 life sentence has the same effect as 100. (Lloyd does not

profess concern about whether additional life sentences would affect him following reincarnation.)

In 2003 Lloyd asked the district court to reduce his sentence under 18 U.S.C. §3582(c)(2), which permits a court to do this when the Sentencing Commission has reduced the applicable Guideline range and made the change retroactive. See 28 U.S.C. §994(*o*). Lloyd did not rely on any post-1997 change, however; instead he contended that his sentences had been unlawful when imposed, because the district judge had miscalculated his relevant conduct and because the Continuing Criminal Enterprise statute, 21 U.S.C. §848, under which he had been sentenced, did not apply to his offenses. This led the United States to contend that Lloyd had launched a second collateral attack, forbidden by 28 U.S.C. §2255 ¶8 (incorporating 28 U.S.C. §2244(b)) because this court had not approved it in advance. The district court, however, did not address this contention and entered an order that reads in full: "Petitioner's motion for sentence modification pursuant to §3582(c)(2) (767-1) is denied." This unexplained resolution violates Circuit Rule 50, which requires district judges to give reasons for all appealable orders. And, if the United States is right about the nature of Lloyd's motion, the order is a substantive blunder as well, for the only proper disposition would have been dismissal for lack of jurisdiction. See *Nuñez v. United States*, 96 F.3d 990 (7th Cir. 1996).

When the time came for the United States to tender a brief, it filed instead a motion to dismiss the appeal. The gist of its argument is that Lloyd lacked our permission to commence a second collateral attack. What that has to do with the propriety of an appeal is a mystery. The district court made a final decision, and Lloyd filed a timely notice of appeal. What more is necessary to appellate jurisdiction? Lloyd is entitled to appellate review to test whether the United States is right about the characterization of his motion in the district court (or whether, as the district

judge thought, it is defective for some other reason). Instead of asking us to dismiss Lloyd's appeal, the United States should have asked us to vacate the district court's decision and remand with instructions to dismiss for want of jurisdiction. As we must consider jurisdictional questions on our own, even though the prosecutor has asked for the wrong relief, we turn to that subject.

Although Lloyd captioned his papers in the district court as a request for a sentence reduction under §3582(c)(2), his request is unrelated to that statute. Many decisions in this circuit hold that substance controls over the caption.

> Any motion filed in the district court that imposed the sentence, and substantively within the scope of §2255 ¶1, *is* a motion under §2255, no matter what title the prisoner plasters on the cover. See, e.g., *Ramunno v. United States*, 264 F.3d 723 (7th Cir. 2001). Call it a motion for a new trial, arrest of judgment, mandamus, prohibition, coram nobis, coram vobis, audita querela, certiorari, capias, habeas corpus, ejectment, quare impedit, bill of review, writ of error, or an application for a Get-Out-of-Jail Card; the name makes no difference. It is substance that controls. See *Thurman v. Gramley*, 97 F.3d 185, 186-87 (7th Cir. 1996).

*Melton v. United States*, 359 F.3d 855, 857 (7th Cir. 2004) (emphasis in original). Lloyd's motion advanced the kind of arguments and sought the kind of relief covered by §2255 ¶1. It therefore was a collateral attack, and because we had not granted permission for its commencement the district court was obliged to dismiss it for lack of jurisdiction. Although a miscaptioned *initial* collateral attack does not count for purposes of §2244(b) and §2255 ¶8 unless the district judge alerts the prisoner that it will use up the one allowed as of right, see *Castro v. United States*, 540 U.S.

375 (2003), all later collateral attacks must be seen for what they are. A captioning error in a successive collateral proceeding cannot cost the prisoner any legal entitlement, so *Castro*'s warn-and-allow-withdrawal approach does not apply. See *Melton*, 359 F.3d at 857.

All of this is straightforward, so it is puzzling that both the district court and the prosecutor have mishandled the situation. What led us to issue a published opinion, however, is not these oversights but the litigation strategy adopted by the United States. It is a strategy that is all too common, has been disapproved, see *Ramos v. Ashcroft*, 371 F.3d 948, 949-50 (7th Cir. 2004), yet continues. The strategy is this: instead of filing a brief on the due date, the appellee files something else, such as a motion to dismiss. The goal and often the effect is to obtain a self-help extension of time even though the court would be unlikely to grant an extension if one were requested openly.

It also creates busywork for the court and its staff. One of the prosecutor's motions (to defer briefing while the motion to dismiss was under advisement) went to a staff attorney and then to a motions judge; several orders were entered (including one directing Lloyd to respond); next the motion to dismiss and response were routed to a different motions judge (the identity of the motions judge changes weekly), who had to convene a three-judge motions panel to rule on the dispositive motion. Because the United States' position is frivolous (it does not begin to demonstrate that *this court* lacks jurisdiction), the normal result would have been an order denying the motion. Next the United States would have filed a brief, following several months' delay while the motions were kicking around inside the court, and the appeal would have been submitted to another panel. By then seven appellate judges (plus two or three staff attorneys) could have become involved in three waves of motions and briefs. And for what? Just because one attorney let an

appeal get too close to a briefing deadline and decided to file a three-page motion in lieu of a ten-page brief?

Every brief must contain a jurisdictional section, where any problems with our jurisdiction could have been noted. A separate motion to dismiss was unnecessary. But instead of waiting for the brief to flag a jurisdictional problem, counsel should call it to the court's attention at the outset. Circuit Rule 3(c)(1) requires each appellant to file a docketing statement containing jurisdictional particulars. Lloyd filed his on September 15, 2003. Rule 3(c)(1) adds: "If the docketing statement is not complete and correct, the appellee must provide a complete one to the court of appeals clerk within 14 days after the date of the filing of the appellant's docketing statement." That would have been September 29, 2003. The United States let that date pass in silence and did not say "boo" about appellate jurisdiction until November 9, 2004, when it filed the motion to dismiss Lloyd's appeal. Why didn't the United States make this point a year earlier?

Thus we repeat what we said in *Ramos*: "If events justify a last-minute motion concerning jurisdiction, venue, sanctions, or any other subject, then that motion may *accompany* the brief; a motion is not a substitute for a brief." 371 F.3d at 950 (emphasis in original). Briefs must be filed when due, and jurisdictional objections should be made at the outset of the appeal, as Circuit Rule 3(c)(1) contemplates. We trust that all litigants— especially institutional ones such as the Department of Justice—will conform their practice to this court's rules.

The "Motion to Dismiss Appeal" is denied. The decision of the district court is vacated, and the matter is remanded with instructions to dismiss for lack of subject-matter jurisdiction. We have treated Lloyd's brief as an implied request for permission to commence a second collateral attack. Because none of the criteria for that step, see §2244(b)(2), has been satisfied, this request is denied.

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*