In the

# United States Court of Appeals

### For the Seventh Circuit

No. 22-1779

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DINISH L. WATSON,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Illinois
No. 3:21-cr-30031 — **David W. Dugan**, *Judge*.

SEPTEMBER 7, 2022

Before EASTERBROOK, SCUDDER, and JACKSON-AKIWUMI,
*Circuit Judges*.

SCUDDER, *Circuit Judge*. Plea agreements are common in
federal criminal practice, and many contain a provision in
which the defendant, often in exchange for a concession from
the government, agrees to waive his right to appeal. Some de-
fendants nonetheless then appeal, with the government un-
derstandably often reacting by saying it wants the court to en-
force the waiver. Before us is a motion from the government

asking us to hold Dinish Watson to the waiver of appeal in his plea agreement and, more generally, inviting us to revisit the way we resolve appeals like this.

In denying the government's motion, we largely adhere to our current practice for addressing these circumstances. That approach best balances the competing interests at stake while also affording the government a fair opportunity to avoid investing unnecessary resources in appeals that should be dismissed on the basis of a plea agreement waiver.

**I**

Watson pled guilty to federal charges pursuant to the terms of an agreement that waived his right to appeal any aspect of his conviction or sentence, subject to exceptions not immediately relevant. Following sentencing Watson instructed his appointed counsel to file a notice of appeal. Counsel did so but then moved to withdraw because he did not practice in appellate courts. We then appointed another lawyer and set a briefing schedule allowing 90 days for the opening brief. The government reacted by pointing to the waiver in the plea agreement and moving to dismiss the appeal.

In charting this course, the government noted our practice of treating motions like this as a notice of its intent to seek dismissal, as outlined in *United States v. Manning*, 755 F.3d 455, 456 (7th Cir. 2014) (Posner, J., in chambers), but asked us to abandon that procedure. Within the ten days normally available to oppose a motion, see Fed. R. App. P. 27(a)(3)(A), Watson's counsel responded and urged us to follow *Manning*, and explained that he otherwise needed more time to confer with his new client and to respond adequately to the government's request to dismiss the appeal.

We then invited the parties to expand on their positions about the appropriate procedures for resolving appeals involving waivers like this one.

## II

### A

We start by sketching the basic principles at play here. Though we, like many courts, refer to agreements like Watson's as "appeal waivers," that terminology is a touch too loose and imprecise. See *Garza v. Idaho*, 139 S. Ct. 738, 744–45 (2019). A defendant does not, by entering one of these agreements, waive his right to *file* a notice of appeal. Rather, he forfeits only his ability to raise certain claims on appeal. Some claims always remain available, either by the terms of the agreement or because we will not enforce a waiver of particular rights. See, *e.g.*, *United States v. Adkins*, 743 F.3d 176, 192–93 (7th Cir. 2014). In short, even a broad waiver differs only in degree, not in kind, from a normal guilty plea that bars many claims. See *Garza*, 139 S. Ct. at 747.

Remember, too, that criminal defendants are entitled to the effective assistance of counsel on direct appeal. See *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). And no doubt a first order of business for defense counsel on appeal will be to consider whether a waiver of appeal in a plea agreement leaves the defendant with any non-frivolous ground for appeal. Part of that consideration, of course, will include discussions with the defendant whether to dismiss the appeal voluntarily, if the waiver applies. See Fed. R. App. P. 42(b); 7th Cir. R. 51(f).

We know from experience that often defense counsel's assessment of a case and discussions with the defendant will lead to a voluntary dismissal of a previously filed notice of

appeal. That is what has happened here. While the government's motion to dismiss was under advisement, Watson filed his own motion to dismiss voluntarily. But in other instances the defendant may want to press ahead with an appeal. In that situation, defense counsel is not then obligated to raise whatever waived or otherwise foreclosed arguments the defendant may demand. Rather, counsel owes a professional duty to the court to refrain from frivolous litigation—risking discipline if they press on with utterly meritless claims. See, *e.g.*, *United States v. Patridge*, 507 F.3d 1092, 1096–97 (7th Cir. 2007).

The Supreme Court struck a balance between these two duties—one to the client and the other to the court—in *Anders v. California*, 386 U.S. 738 (1967). As *Anders* is applied in this Circuit, appointed counsel who deem an appeal frivolous must file a formal brief explaining the nature of the case, considering the issues that the appeal might involve, and exploring why each would go nowhere if argued. See *United States v. Edwards*, 777 F.2d 364, 366 (7th Cir. 1985). The defendant then has 30 days to file a response contesting counsel's conclusion. See 7th Cir. R. 51(b). Once that deadline has passed, and without a government submission, the *Anders* brief and any response are submitted to a panel and we issue a decision either accepting counsel's conclusions and dismissing the appeal or rejecting them and directing further briefing. The Supreme Court has suggested the *Anders* process is one good way to determine whether a waiver forecloses an appeal. *Garza*, 139 S. Ct. at 746 n.8, 749 n.14. And cases involving waivers are a mainstay of our *Anders* docket.

Our first foray into the procedures surrounding enforcement of appeal waivers emphasized the need to comply with our prescribed *Anders* process, even when a waiver is

involved. In *United States v. Mason*, 343 F.3d 893 (7th Cir. 2003), the government pointed to the waiver of appeal in a plea agreement and moved to dismiss an appeal long before the opening brief was due. We recognized the motion put "pressure" on defense counsel and "effectively shortened by several months … the time that counsel had in which to assess Mason's case and file a brief that … would comply with *Anders*." *Id.* at 894. Counsel did so promptly and conceded the waiver foreclosed all possible arguments on appeal. See *id.* We nonetheless declined to rule on the motion and instead followed our standard practice under Circuit Rule 51(b) of giving the defendant time to respond. It was only when that deadline passed that we resolved the appeal as we would any other *Anders* case. See *United States v. Mason*, 86 F. App'x 194, 195 (7th Cir. 2004).

Everything in *Mason* happened faster than usual: defense counsel acted immediately in responding to the government's motion to dismiss and filing a thorough *Anders* submission. Knowing that all of this takes more time across the mine run of appeals, we suggested that extensions would be freely granted in future cases. See 343 F.3d at 895.

One such request for an extension of time came in *Manning*, and it was that motion that prompted Judge Posner to write an in-chambers opinion providing guidance for the handling of these situations. With or without a motion to dismiss an appeal from the government, he observed, defense counsel would have to either file an *Anders* brief conceding the waiver foreclosed any appellate arguments or submit a nonfrivolous contention that escapes the waiver: the only difference was the shorter time to do so. See 755 F.3d at 455. But that difference all but disappears once necessary extensions become

involved. Judge Posner therefore construed an early motion to dismiss as a "notice of intent to enforce the appeal waiver," which he thought would "have the same accelerating effect as a motion to dismiss, while requiring less work for both sides and preserving the briefing schedule." *Id.* at 456.

By and large our court has followed the *Manning* procedure for nearly the last decade.

## B

The government now asks us to chart a different path forward. It suggests that it should be allowed to file a motion to dismiss early in the appeal asserting that all potential arguments are foreclosed because of the waiver. It then proposes we suspend briefing and give defense counsel 30 days (with liberal extensions) to file either a response identifying the arguments she intends to make that escape the waiver or instead a formal *Anders* brief agreeing with the motion, at which point the standard *Anders* process would kick in. This system, the government insists, will more swiftly resolve cases with appeal waivers—benefitting both itself and, indirectly defendants by making plea waivers more valuable bargaining chips. See *United States v. Worthen*, 842 F.3d 552, 555–56 (7th Cir. 2016). Otherwise, the government posits, it will find itself having to file briefs arguing for both the enforcement of the waiver and, in the alternate, affirmance on the merits even in cases where it is obviously entitled to dismissal.

No doubt the government should not as a matter of course have to submit full merits briefs in every case where the defendant agreed to an appeal waiver. The whole point of the waiver, after all, is to realize a savings of resources. Proper application of the *Manning* procedure allows for just that.

What we often see is what we would expect from defense counsel complying with their professional obligations: they either convince their clients to dismiss an appeal or file an *Anders* brief. Neither resolution requires any input from the government—and definitely not a merits brief.

Indeed, Watson's counsel offers data from his own practice as one of this circuit's skilled and experienced public defenders. He suggests that over 80% of appeals with waivers follow one of these two paths to resolution, with the most travelled being voluntary dismissal. The government counters with its own statistics, pointing us to 42 appeals over the last eight years where we enforced a waiver only after full briefing. Some of these cases surely involved thorny questions that demanded a close look. But the government's number is less dire when one compares it to our 12 *Anders* orders enforcing appeal waivers in the last year alone. In *none* of these cases was a motion to dismiss or a notice of intent filed.

Nothing about our current practice requires any meaningful fixing. A motion to dismiss is redundant if we presume— as we do—that defense lawyers will comply with their professional obligations to not brief frivolous arguments. We see no benefit to converting a motion to dismiss into an alternative *Anders* process with its own special timetable when our established *Anders* procedure already provides a schedule that gives counsel ample time to review the record and effectively advise a client. The government's proposal creates only more work for the government itself (which must prepare the motion), for defense counsel (who must file on an expedited schedule or seek extensions), and for us (who must oversee all this).

The government's filing a motion to dismiss *before* the opening brief is for the most part premature. Again, even a broad appeal waiver forecloses only certain arguments, not the appeal itself, and a defendant has no obligation to identify what arguments he may bring when filing a notice of appeal. See Fed. R. App. P. 3(c); *Garza*, 139 S. Ct. at 745. Neither counsel nor the defendant have done anything incompatible with the waiver unless and until they press an argument the waiver forecloses. The grounds for dismissal do not exist until those arguments are made in the opening brief. To the extent the government fears new counsel might make such an argument because they overlooked the waiver in their review or gambled blindly on the government's "waiving the waiver," a notice of intent performs that function. See *Manning*, 755 F.3d at 456. Though equally effective might be a polite phone call or email.

A motion to dismiss based on an appeal waiver may be most appropriate after a brief is filed. At that point we need not predict whether the defendant will make only waived arguments. We can just review the defendant's brief.

The practice that has grown up under *Manning* allows the government to file such a motion. *Manning*'s notice was always something to be submitted "*before* filing a motion to dismiss." *Id.* at 456 (emphasis added). The government's confusion seems to rest on a misunderstanding of other decisions holding motions to dismiss must be filed early in the case. See, *e.g.*, *United States v. Lloyd*, 398 F.3d 978, 980–81 (7th Cir. 2005). In each we confronted motions to dismiss that were filed immediately before the appellee's brief was due, apparently as a "self-help extension of time." *Id.* at 980. Although certain jurisdictional and venue issues should be raised at the first

opportunity, see 7th Cir. R. 3(c); *Ramos v. Ashcroft*, 371 F.3d 948, 950 (7th Cir. 2004), an appellee who seeks dismissal based on the arguments that the appellant's brief might raise can, and should, wait until after that brief has been filed. Such a motion should be filed promptly after the appellant's brief—ideally within a week—given the ease of comparing the brief with the waiver. Otherwise, the government remains free to seek to enforce a waiver in its own brief.

To be sure, even a persuasive motion to dismiss timely filed after the appellant's brief may not be granted. That reality reflects our general disfavor towards motions seeking summary resolution that so often multiply the number of judges that must consider the case and review the record. See *United States v. Fortner*, 455 F.3d 752, 754 (7th Cir. 2006); *Lloyd*, 398 F.3d at 980. Still, we will grant such a motion when "the arguments in the opening brief are … completely insubstantial," whether because of a waiver or for any other reason. *Fortner*, 455 F.3d at 754. That means some non-frivolous, but ultimately waived, arguments may end up going through full briefing. But this possibility is just a necessary cost of the sometimes difficult task of separating waived and unwaived arguments. See *Garza*, 139 S. Ct. at 749.

In sum, then, our procedures for resolving cases with appeal waivers, at least if *Anders* applies, are as follows:

1. We continue to discourage the government from moving to dismiss before the defendant has filed his brief. A motion filed before the opening brief will be construed as only a notice of intent to stand on the waiver.
2. A notice of intent does not alter the briefing schedule or the obligations of defendant's counsel. If counsel sees no way to proceed with an appeal, she should

move to withdraw and file an *Anders* brief. The court will resolve the motion to withdraw consistent with Circuit Rule 51.

3. If counsel instead files a brief raising arguments on the merits, the government may then move to dismiss the appeal based on the waiver (without any accompanying merits briefing) and should do so well before its own brief deadline. In the hopefully rare event that the appellant's brief ignores the waiver or offers only flimsy arguments for escaping it, a motions panel will dismiss the appeal after considering any response.

4. The government is not obligated to file either a notice of intent or a motion to dismiss to preserve its rights under the agreement. If it does not take either action, or if a motions panel denies its motion to dismiss, it remains free to argue for enforcement of the waiver in its own brief.

Because we intend to adopt this as the uniform procedure for handling these matters in our Circuit, we have circulated this opinion among all active judges pursuant to Circuit Rule 40(e). No judge favored hearing en banc.

## III

Consistent with the procedure adopted above, we DENY the government's motion to dismiss, except to the extent that we construed it as a notice of intent to enforce Watson's appeal waiver. We will issue a separate order dismissing the appeal on Watson's own motion.